6 A.3d 995

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Marc P. BRIGIDI, Appellee.**

Supreme Court of Pennsylvania.

Submitted June 15, 2010.

Decided Oct. 19, 2010.

Robert Martin Falin, Esq., Risa Vetri Ferman, Esq., Norristown, Montgomery County District Attorney's Office, for Commonwealth of Pennsylvania.

Max Paul Little, Esq., Towanda, PA District Attorneys Association, for Appellant Amicus Curiae, Pennsylvania District Attorneys Association.

Marc P. Brigidi, pro se.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

The question presented is whether restrictions on the admissibility of pre-arrest alcohol screening reposited in the Vehicle Code pertain in prosecutions under the Crimes Code.

In May 2007, Appellee received a citation for the summary offense of consuming alcoholic beverages while under the age of twenty-one. *See* 18 Pa.C.S. § 6308. He was found guilty in a magisterial district court and lodged an appeal in the common pleas court.

At the ensuing *de novo* bench trial, the Commonwealth presented the testimony of the arresting officer, who explained that he was tasked to investigate an underage drinking party, at which he found Appellee among those present. The officer indicated that he administered alcohol testing using an electronic pre-arrest breath testing device known as an Alco–Sensor.[1] In response to Appellee's objection to admission of the test result, the Commonwealth asserted that such machine was an approved device pursuant to a Department of Health notice. *See* N.T., Feb. 21, 2008, at 9–10 (citing Notice, Prearrest Breath Testing Devices, 35 Pa.B. 2694

---

1. Devices used to conduct such testing are variously referred to as pre-arrest breath testing devices (or "PBTs"); preliminary and portable breath testers; and alcohol screening devices.

(Dep't of Health April 30, 2005)).[2] Upon continuing objections, the prosecutor adduced some additional foundation, as follows:

Q. Officer ..., have you had any training with regard to using the Alco–Sensor?

 * * *

[A.] There has been training. I didn't attend a school. When you receive the PBTs new, we used them. We work out how to use it, so on and so forth. There are directions in the box and we used it.

Q. And during your eight years of employment with Upper Dublin, have you had occasion to use the Alco–Sensor at other times?

A. Yes.... It's a commonly used tool in our profession.

Q. And as an Officer with Upper Dublin, are you required to attend any type of updates or certification on your police work in general each year.

A. Yes.

N.T., Feb. 21, 2008, at 15–16.

The arresting officer then testified that the pre-arrest breath testing device indicated that Appellee's blood alcohol content was .144 percent. *See id.* at 17.[3] On cross-examination, the officer indicated that: to his knowledge, the unit was not calibrated and did not need to be calibrated; he did not possess any certification for the unit's use; and he did not take various precautions, such as observing a pre-testing waiting period. *See id.* at 22, 31–32; *see also id.* at 37 (redirect).

The common pleas court entered a verdict of guilty, and Appellee filed a further appeal. In its opinion under Rule of Appellate Procedure 1925(a), the common pleas court explained:

2. As further developed below, this notice was issued pursuant to authority contained in Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547.

3. The officer did not recall seeing Appellee in possession of an alcoholic beverage or manifesting any visible signs of intoxication.

At the trial, the Court took judicial notice that an "Alco–Sensor" . . . is an approved pre-arrest breath taking device, as set forth in Volume 35 of the *Pennsylvania Bulletin*, No. 18, dated April 30, 2005. Such an improved [sic] PBT is not calibrated and tested for accuracy. Accordingly, even though it is a proper tool to assist an officer in determining probable cause for an arrest, it does not provide sufficient evidence for the conviction of a misdemeanor such as driving under the influence of alcohol[.] *Commonwealth v. Myrtetus*, 397 [Pa.Super.] 299, 580 [A.2d] 42 (1990)[.] However, the results of an approved PBT are admissible to support a summary charge of underage drinking and they create a rebuttable presumption that the defendant has engaged in the prohibited activity[.] *Commonwealth v. Allen*, 454 [Pa.Super.] 73, 684 [A.2d] 633 (1996), *see also*, 27 *Standard Pennsylvania Practice 2d*, § 135–209. Accordingly, once this Court took judicial notice of the PBT as an approved device, the officer's credible testimony as to the results obtained was admissible without the need to establish calibration, certification or any other factors cited by the defendant[.]

*Commonwealth v. Brigidi*, No. 46 SA 1118–07, *slip op.* at 3–4 (C.P.Montgomery, May 5, 2008).

Upon its review, a divided Superior Court reversed and remanded for a new trial. *See Commonwealth v. Brigidi*, 977 A.2d 1177 (Pa.Super.2009). The majority explained that the use of electronic devices to measure breath alcohol content is authorized by Section 1547 of the Vehicle Code, highlighting the requirements of "approved" and "calibrated" equipment as prerequisites to admissibility. *Id.* at 1179–80, 1182 (citing 75 Pa.C.S. § 1547). The majority accepted that the device was an approved one, pursuant to the Department of Health notice invoked by the Commonwealth. Nevertheless, because the arresting officer indicated that the breath testing unit was not calibrated, the court found that the test result should have been excluded from evidence. *See id.* at 1182. In response to the Commonwealth's argument that *Allen* stands for the proposition that the requirements of calibration and certification

are not applicable in cases of underage drinking, the majority stated:

> [T]he Commonwealth's citation to *Allen* is inapposite, since in *Allen* this Court did not specifically address the issue of calibration, but limited its inquiry to the issue of whether the results of a preliminary breath test (PBT) derived from a test authorized under the Vehicle Code was admissible to support a charge of underage drinking brought under the Crimes Code.

*Brigidi,* 977 A.2d at 1182.[4]

 We allowed appeal, on the Commonwealth's petition, to consider whether the Vehicle Code's evidentiary prerequisites pertaining to pre-arrest breath testing extend into the Crimes Code setting. As this issue is one of statutory interpretation, our review is plenary.

The Commonwealth argues that the Superior Court majority ignored the plain language of Section 1547(c), which on its terms is limited to "any summary proceeding ... in which the defendant is charged with a violation of section 3802 [driving under the influence] or any other violation of this title [*i.e.,* the Vehicle Code] arising out of the same action." 75 Pa.C.S. § 1547(c). According to the Commonwealth, Section 1547(c)(1)'s evidentiary restrictions plainly apply only to cases arising under the Motor Vehicle Code. In the absence of a statutory restriction on the use of pre-arrest breath testing in such cases, the Commonwealth asserts that the common pleas court's admission of test results must be respected.

The Commonwealth also contends that the Superior Court majority inappropriately disregarded *Allen's* refusal to extend Section 1547(c)(1)'s requirements into the underage drinking context. *See Allen,* 454 Pa.Super. at 77, 684 A.2d at 634–35. The Commonwealth describes the majority's more limited perspective on *Allen* as "artificial" and "somewhat indecipherable." Brief for the Commonwealth at 13.

4. Judge Klein dissented, asserting that Appellee's Superior Court brief failed to meet the requirements of the Rules of Appellate Procedure. As such, his position was that the appeal should have been quashed. *See Brigidi,* 977 A.2d at 1182 (Klein, J., dissenting).

The Commonwealth's *amicus*, the Pennsylvania District Attorneys Association, complains that the requirement of "evidential-quality breath-testing" in underage drinking prosecutions is unworkable. Brief for *Amicus* Pa. Dist. Attorneys Ass'n at 5. In this regard, the Association catalogues challenges facing police officers in investigating underage drinking.[5] According to the Association, its members are not philosophically opposed to the regulation of pre-arrest breath testing use in underage drinking prosecutions. However, they believe such a regulatory scheme may best be created legislatively, with the practicality and purpose of underage drinking prosecutions taken into account. The Association recognizes that "there is a legitimate interest in assuring the reliability of PBT results used to secure [underage drinking] convictions." *Id.* at 5. Nevertheless, it finds a fundamental difference between driving while intoxicated prosecutions under the Vehicle Code, where the Commonwealth may be required to establish a specific blood alcohol content, and underage drinking proceedings under the Crimes Code, in which the prosecution merely needs to establish the fact of consumption. The Association posits that this distinction justifies lesser regulation in the latter context.[6]

Upon consideration of the arguments, and as a threshold matter, there appears to be a fundamental misunderstanding of the statutory and administrative regulation of pre-arrest

---

**5.** For example, the Association indicates:

The investigation of UAD can be far less predictable than the investigation of DUI. Often, officers will respond to a report of a party in a remote location. They may arrive at the site of the party on foot, with little or no assistance. The detention of suspects within this context can be far more challenging than the detention of a driver during a vehicle stop. Officers may not be physically able to detain suspects at all, given the unruly nature of an underage drinking "bust." Even if two or three officers were able to detain a party of twenty-five suspects, it is highly unlikely that either officer would be able to observe any one suspect to the degree mandated by 67 Pa.Code § 77.24(a). Therefore, under the Superior Court's ruling, any PBT results they obtained could be ruled inadmissible.
Brief for *Amicus* Pa. Dist. Attorneys Ass'n at 9.

**6.** Appellee filed a *pro se* brief, *inter alia*, incorporating the arguments from his counseled brief filed in the Superior Court.

breath testing devices. Initially, such equipment is not regulated by Section 1547(c) of the Vehicle Code at all, since the statute carefully distinguishes between evidential quality testing and pre-arrest testing, and Section 1547(c) pertains to the former. *See* 75 Pa.C.S. § 1547(c). Pre-arrest breath testing is separately governed by Section 1547(k), under which the use of approved equipment expressly is limited to field screening, as an aid to determine probable cause. *See id.* § 1547(k) ("The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest.").

Second, the Department of Health approval for the use of pre-arrest alcohol screening devices, upon which the Commonwealth has relied, is expressly pursuant to—and limited to— Section 1547 of the Vehicle Code (and other similar pre-arrest testing scenarios).[7] Thus, under the Commonwealth's own line of argumentation—*i.e.*, that authorities centered on the Vehicle Code should not extend to the Crimes Code setting—this administrative approval is not controlling in the present proceeding under the Crimes Code.

More important, the Health Department approval upon which the Commonwealth relies simply does not concern the subject matter of Section 1547(c), namely, evidential quality alcohol testing. Rather, the notice is pursuant to Section 1547(k)—"prearrest breath test[ing]"—and mirrors that statutory provision. Consequently, the notice indicates that the sole purpose of the device approval is to assist officers in determining probable cause. *See* Notice, 35 Pa.B. 2694. Thus, there simply is no underlying administrative approval relating to admissibility of pre-arrest breath testing results in *any* form of prosecution. *Accord Commonwealth v. Marshall,* 824 A.2d 323, 328 (Pa.Super.2003) ("To the extent that the Department of Health approves the PBT device, . . . it is for this field screening purpose only[.]").[8]

---

**7.** Per the terms of the Department of Health's notice, the approvals also pertain in the context of pre-arrest testing under the Fish and Boat Code, *see* 30 Pa.C.S. § 5125(c)(1), and the Game and Wildlife Code, *see* 34 Pa.C.S. § 2502(c), neither of which is relevant here.

**8.** Notably, the Department has issued separate notices, pursuant to Section 1547(c) of the Vehicle Code, identifying equipment that *is*

For this reason, the common pleas court erred by taking judicial notice, for the purpose of determining admissibility, of the pertinent Health Department notice. Moreover, the common pleas court's indication that the Alco–Sensor does not require calibration and accuracy testing is also questionable, since the court did not denote the source of authority upon which it was relying. Presumably, the common pleas court relied on the arresting officer's testimony that, to his knowledge, calibration was not required. The officer, however, was not qualified as an expert, and the limited nature of his training and understanding was apparent from his testimony.[9]

■ Next, we address the rebuttable presumption the common pleas court derived from the Superior Court's decision in *Allen*. In this regard, the *Allen* panel relied on *Myrtetus* as establishing that pre-arrest breath testing is reliable to discern the presence or absence of alcohol in a suspect's blood. *See Allen*, 454 Pa.Super. at 77, 684 A.2d at 634. However, *Myrtetus's* comments on reliability were limited to "the results ˙ of chemical tests of breath or blood *taken after arrest."* *Myrtetus*, 397 Pa.Super. at 309, 580 A.2d at 47 (emphasis added). With regard to *pre-arrest* breath testing, the court stated: "No such presumption [of validity and reliability] can be made from the preliminary breath test, nor do we find the legislature intended to create such a presumption." *Id.* The presumption *Allen* advanced, therefore, is based on a patent misreading of the sole source of authority upon which it relied. Accordingly, this presumption is not sustainable on the

approved for evidential quality breath testing. *See, e.g.,* Notice, Equipment to Determine Blood Alcohol Content, 37 Pa.B. 5435 (Dept' of Health Oct. 6, 2007) ("Equipment approved under this notice may be used by law enforcement officials to obtain test results which will be admissible in evidence [for identified purposes including Vehicle Code violations]".).

9. Parenthetically, the manufacturer's website for the Alco–Sensor unit specifies that "[c]hecks and calibrations should be performed with either a National Highway Traffic Safety Administration's (NHTSA) approved wet bath simulator or a dry gas standard." Intoximeters Incorporated Products, http://www.intox.com/products/as_datasheet.asp?pnid=14 (last visited Aug. 5, 2010).

grounds stated and must be disapproved unless and until a persuasive rationale is advanced and accepted.

In the present case, the Superior Court majority also assumed a threshold, evidence-related approval by the Department, which, in fact, is lacking. Nevertheless—and although we agree with the Commonwealth that the evidential requirements of Section 1547(c) are not directly relevant—it is worth repeating that the Commonwealth's own position that the Alco–Sensor is an approved device derives from Section 1547. For purposes of responding to the question presented here on the terms on which it is framed, we find that the Commonwealth cannot invoke Section 1547 as support for admissibility (even indirectly) while simultaneously disavowing any obligation of adherence to the requirements of that section.

Thus, while the Superior Court's decision is predicated on an incorrect assumption, its reasoning is otherwise appropriate to the disposition of this specific case, and we will so limit it. Moreover, the result was correct based on the independent ground that the underlying Health Department approval was lacking beyond the sanctioning of field use of the pre-arrest breath testing unit to assist in determining probable cause.

In response to the arguments of the Commonwealth's *amicus*, the legislative limitations on the admissibility of preliminary alcohol testing reflect obvious reliability concerns, and we do not see from the face of the statute that such concerns are limited to determination of a specific blood alcohol percentage. Indeed, the broader concerns are also reflected in a number of judicial opinions from other jurisdictions. For example, an Ohio court recently indicated as follows:

> PBT results are considered inherently unreliable because they "may register an inaccurate percentage of alcohol present in the breath, and may also be inaccurate as to the presence or absence of any alcohol at all." PBT devices are designed to measure the amount of certain chemicals in the subject's breath. The chemicals measured are found in consumable alcohol, but are also present in industrial chemicals and certain nonintoxicating over-the-counter medi-

cations. They may also appear when the subject suffers from illnesses such as diabetes, acid reflux disease, or certain cancers. Even gasoline containing ethyl alcohol on a driver's clothes or hands may alter the result. Such factors can cause PBTs to register inaccurate readings, such as false positives. This lack of evidential reliability provides a basis for excluding PBT results from admissibility at trial.

State v. Shuler, 168 Ohio App.3d 183, 858 N.E.2d 1254, 1257 (2006) (citations omitted).

We do appreciate the difficulties of proof facing the Commonwealth in underage drinking scenarios, as amply developed by amicus. See supra note 5. Amicus, however, has not demonstrated persuasively that the prevailing understanding that pre-arrest breath testing devices are appropriate for field screening purposes only is outdated. If the technology for these devices has advanced (or advances) to a stage where they manifest sufficient reliability to satisfy prevailing judicial standards governing the admissibility of scientific evidence, the Commonwealth may demonstrate this in courts of law via established means. See, e.g., Commonwealth v. Blasioli, 552 Pa. 149, 713 A.2d 1117 (1998) (reflecting first-time judicial acceptance in Pennsylvania of the product rule used in explaining the significance of DNA evidence). The Commonwealth may also pursue additional legislative and/or administrative approvals, and these may be respected in the courts to the degree they comport with constitutional norms. What the Commonwealth may not do, however, is to suggest that an expressly limited scheme of statutory and administrative approval extends beyond its own carefully delineated boundaries.

Amicus's brief accurately reflects another underlying concern in these cases, which we also share: "Conviction of UAD carries criminal and collateral sanctions. Obviously, there is a legitimate interest in assuring the reliability of PBT results used to secure such convictions." Brief for Amicus Pa. Dist. Attorneys Ass'n at 5. Nevertheless, neither amicus nor the Commonwealth has provided any indicia of reliability whatsoever from which admissibility could be assessed according to prevailing judicial standards. In the absence of such support,

we simply are unable to subordinate the interests of the accused to considerations of ease and efficiency for law enforcement. As applied to the present case, consistent with the legislative and administrative reluctance to authorize the admission of pre-arrest breath testing results in judicial proceedings, we find insufficient evidence, on this record, to support such admission over Appellee's timely objection.

In summary, we agree with the Commonwealth that Section 1547 of the Vehicle Code generally does not apply to proceedings exclusively under the Crimes Code. Nevertheless, we hold that the Commonwealth also may not rely on statutory and administrative approvals of pre-arrest breath testing devices pursuant to Section 1547 of the Vehicle Code to justify the admission of test results into evidence in prosecutions under the Crimes Code.

In concurrence, Mr. Justice Eakin indicates that he would affirm based on the Superior Court's rationale. In considering this position, it is important to bear in mind that the *Brigidi* panel was bound by *Allen*. *See Commonwealth v. Crowley*, 413 Pa.Super. 554, 556, 605 A.2d 1256, 1257 (1992) (explaining that "precedent (*stare decisis*) requires us to adhere to a ruling of this Court until it is reversed either by our Supreme Court or an en banc panel of Superior Court"). Indeed, the *Brigidi* panel accepted *Allen's* central premise that pre-arrest breath testing is presumptively reliable to discern the presence or absence of alcohol in a suspect's blood (albeit the panel implemented a calibration requirement). *See Brigidi*, 977 A.2d at 1182. However, particularly since the sole authority relied upon by *Allen* said precisely the opposite concerning the reliability aspect, we find that a more probing review presently is implicated.

The order of the Superior Court is affirmed.

Chief Justice CASTILLE, Justices BAER, TODD, McCAFFERY, Justice ORIE MELVIN join the opinion.

Justice EAKIN files a concurring opinion.

## CONCURRING OPINION

Justice EAKIN.

I would affirm based on the well-reasoned opinion of Superior Court President Judge Emeritus McEwen.