J-S61042-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KYLE DAVID PARADISE, | : | |
| | : | |
| Appellant | : | No.  626 MDA 2015 |

Appeal from the Judgment of Sentence Entered April 1, 2015,
in the Court of Common Pleas of Lancaster County,
Criminal Division, at No(s): CP-36-CR-0004603-2014

BEFORE:    PANELLA, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED DECEMBER 02, 2015**

Kyle David Paradise (Appellant) appeals from the judgment of sentence imposed following his convictions of driving under the influence of alcohol (DUI) and driving while operating privilege is suspended or revoked (DUI-related). We affirm.

The trial court summarized the relevant factual history of this matter as follows.

> On July 27, 2014, at approximately 12:45 a.m., Officer Bradley Reddinger of the Manheim Township Police Department was on routine patrol in a marked police car in Lancaster Township, Lancaster County. Manheim Township police patrol Lancaster Township pursuant to an agreement between the two townships. While driving on North President Avenue toward Marietta Avenue, Officer Reddinger observed a stationary blue Toyota Matrix in the left turn lane, preparing to make a left turn onto Buchanan Avenue.
>
> Officer Reddinger ran the Toyota's license plate through his computer system which returns information from PennDOT.

*Retired Senior Judge assigned to the Superior Court.

Officer Reddinger passed the Toyota while traveling approximately 10 to 15 miles an hour, and observed through an open rear window of the vehicle that a white male, approximately 20 to 30 years old, was driving the Toyota. There is a street lamp near the intersection of North President and Buchanan Avenues, and Officer Reddinger was able to get a good look at the driver for about three or four seconds. About five to ten seconds after Officer Reddinger entered the vehicle's license plate into his computer, and before his patrol car reached the intersection of North President and Marietta Avenues, information was displayed showing that the registered owner, Kyle David Paradise, a 30 year old male, had a DUI suspended driver's license.

Officer Reddinger made a U-turn to pursue the Toyota since based on his observation he concluded the driver matched the description of the registered owner. Officer Reddinger activated his lights and caught up to the Toyota on Buchanan Avenue. The Toyota pulled over in the area of Buchanan Avenue and West End Avenue, which is outside Lancaster Township and inside Lancaster City. Officer Reddinger did not contact the Lancaster City Bureau of Police nor did officers from the City's police department respond to the traffic stop.

Officer Reddinger approached the Toyota and noticed that [Appellant], the same male he had observed driving it on North President Avenue, was still in the driver's seat. [Appellant] provided a state identification card and told Officer Reddinger that his license was suspended for a previous DUI. Officer Reddinger noticed the smell of an alcoholic beverage coming from the vehicle and asked [Appellant] to step outside the vehicle to determine whether the smell of alcohol was coming from [Appellant] or another occupant of the Toyota. [There were four other people in Appellant's vehicle—a 20-to-30-year-old male in the front passenger seat and three females in the back seat.] Officer Reddinger and [Appellant] walked across the street to the sidewalk adjacent to Buchanan Park.

Officer Reddinger has had training and experience in the detection of impaired drivers. Officer Reddinger noticed that [Appellant] was exhibiting signs of impairment in that he had bloodshot eyes, slurred speech and an odor of an alcoholic beverage coming from his breath. Officer Reddinger

- 2 -

administered three field sobriety tests on a flat, dry, level surface which was lit by streetlights, the Officer's flashlight and his patrol car spotlight. These tests were the horizontal gaze nystagmus test ("HGN"), the walk and turn or heel to toe test, and the one[-]leg stand test. [Appellant] showed six out of six possible indicators for impairments on the HGN, four indicators of impairment on the walk and turn test, and no indicators of impairment on the one-leg stand test. Officer Reddinger administered a preliminary breath test ("PBT") to [Appellant] using the Alco Sensor-FST. The Court took judicial notice that the Alco Sensor-FST was approved by the Department of Health as a pre-arrest breath testing device pursuant to 44 Pa. B. 4277 (July 5, 2014). The PBT showed a reading of .138 percent blood alcohol. Officer Reddinger then arrested [Appellant] for driving under the influence of alcohol.

Trial Court Opinion, 6/2/2015, at 2-4 (footnotes and citations omitted).

On November 14, 2014, Appellant filed a pre-trial motion challenging the propriety of the vehicle stop and seeking to suppress the evidence obtained therefrom. On February 2, 2015, following a hearing, the trial court denied Appellant's motion. A non-jury trial followed. At the conclusion of trial, the court found Appellant guilty of both DUI and driving under suspension. On April 1, 2015, Appellant was sentenced to a term of nine months' intermediate punishment, the first 30 days of which was to be served on work release, and the remaining time on house arrest with electronic monitoring. This timely filed appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises three issues for our review.

1. Whether reasonable suspicion to stop Appellant's vehicle existed where the stop was based [solely] on the fact that the operating privilege of one of the two registered owners, a male

age 30, was suspended and two individuals meeting the general description of the owner, males age 20 -30, were seen sitting in the front seat of the car by a police officer while the car was being driven?

2. Whether the extra-territorial stop of Appellant's vehicle in Lancaster City by the Manheim Township Police, based [solely] upon the facts that the operating privilege of one of the two registered owners, a male, was suspended when two males meeting that general description of the owner were seen in the front seat of the car, violated the Municipal Police Jurisdiction Act [(MPJA)], 42 PA.C.S. § 8951 *et seq.*, and requires suppression of the evidence obtained as a result of the stop?

3. Whether the admission of the uncalibrated test results of an unapproved pre[-]arrest breath test device at the suppression hearing was an abuse of discretion and under the circumstances an error of law?

Appellant's Brief at 6 (unnecessary capitalization and trial court answers omitted).

Our scope and standard for reviewing an order denying a motion to suppress is as follows:

We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

***Commonwealth v. Hughes***, 908 A.2d 924, 927 (Pa. Super. 2006).

Following our review of the certified record, the parties' briefs, and the relevant law, we conclude that the opinion of the Honorable James P. Cullen

states findings of fact that are supported by the record, evidences no abuse of discretion or errors of law, and thoroughly and correctly addresses and disposes of Appellant's issues and supporting arguments. Accordingly, we adopt the trial court's opinion, filed on June 2, 2015, as our own, and affirm Appellant's judgment of sentence on the basis of that opinion. The parties shall attach a copy of the trial court's June 2, 2015 opinion in the event of further proceedings.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2015

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA  :

vs.  :  No. 4603-2014

KYLE DAVID PARADISE  :  626 MDA 2015

## OPINION SUR APPEAL

On October 24, 2014, the District Attorney of Lancaster County filed an information charging Defendant, Kyle David Paradise, with one count of driving under the influence of alcohol[1] and one count of driving while operating privilege is suspended or revoked (DUI related).[2] On November 14, 2014, Defendant filed a pre-trial motion seeking to suppress the evidence against him. On February 2, 2015, a hearing on Defendant's motion was held and, after the motion was denied, a non-jury trial followed. At the conclusion of the trial, the Court found Defendant guilty of both charges.

On April 1, 2015, after a presentence investigation, Defendant was placed on the intermediate punishment program for a total of nine months with the first 30 days to be served on work release followed by 150 days of house arrest with electronic monitoring. Defendant was also ordered to pay a fine of $1,750, costs and to comply with other conditions of supervision. (N.T. 4/1/2015, pp. 12-14). On April 8, 2015, Defendant appealed to the Superior Court. Defendant filed his statement of errors complained of on appeal on April 22, 2015, in which he claims that the traffic stop of his vehicle was not supported by reasonable suspicion, that the "extra-territorial" stop of his vehicle was not

---

[1] 75 Pa. C.S. § 3802(b).

[2] 75 Pa. C.S. § 1543(b)(1.1)(i).

supported by probable cause and violated 42 Pa. C.S. § 8953 (a)(2) and that the Court erred in allowing testimony of the results of a pre-arrest breath test.

### Factual Background

The evidence presented established the following. On July 27, 2014, at approximately 12:45 a.m., Officer Bradley Reddinger of the Manheim Township Police Department was on routine patrol in a marked police car in Lancaster Township, Lancaster County. (N.T. 2/2/2015, pp. 5-6, 12). Manheim Township police patrol Lancaster Township pursuant to an agreement between the two townships. (*Id.* at 13). While driving on North President Avenue toward Marietta Avenue, Officer Reddinger observed a stationary blue Toyota Matrix in the left turn lane, preparing to make a left turn onto Buchanan Avenue. (*Id.* at 6).

Officer Reddinger ran the Toyota's license plate through his computer system which returns information from PennDOT. (*Id.* at 7). Officer Reddinger passed the Toyota while traveling approximately 10 to 15 miles an hour, and observed through an open rear window of the vehicle that a white male, approximately 20 to 30 years old, was driving the Toyota. (*Id.* at 7-8). There is a street lamp near the intersection of North President and Buchanan Avenues, and Officer Reddinger was able to get a good look at the driver for about three or four seconds. (*Id.* at 8-9). About five to ten seconds after Officer Reddinger entered the vehicle's license plate into his computer, and before his patrol car reached the intersection of North President and Marietta Avenues, information was displayed showing that the

2

registered owner, Kyle David Paradise, a 30 year old male, had a DUI suspended driver's license.[3] (*Id.* at 9-10).

Officer Reddinger made a U-turn to pursue the Toyota since based on his observation he concluded the driver matched the description of the registered owner. (*Id.* at 10). Officer Reddinger activated his lights and caught up to the Toyota on Buchanan Avenue. The Toyota pulled over in the area of Buchanan Avenue and West End Avenue, which is outside Lancaster Township and inside Lancaster City. (*Id.* at 10-13). Officer Reddinger did not contact the Lancaster City Bureau of Police nor did officers from the City's police department respond to the traffic stop. (*Id.* at 43-44).

Officer Reddinger approached the Toyota and noticed that Defendant, the same male he had observed driving it on North President Avenue, was still in the driver's seat. (*Id.* at 14). Defendant provided a state identification card and told Officer Reddinger that his license was suspended for a previous DUI. (*Id.* at 18). Officer Reddinger noticed the smell of an alcoholic beverage coming from the vehicle and asked Defendant to step outside the vehicle to determine whether the smell of alcohol was coming from Defendant or another occupant of the Toyota.[4] (*Id.* at 17). Officer Reddinger and Defendant walked across the street to the sidewalk adjacent to Buchanan Park. (*Id.* at 18, 20).

Officer Reddinger has had training and experience in the detection of impaired drivers. (*Id.* at 15-16). Officer Reddinger noticed that Defendant was exhibiting signs of

---

[3]At trial, it was determined that the vehicle had a second registered owner, a female named Angela Blo. (N.T. 2/2/2015, pp. 39-40). Ms. Blo's information did not appear on Officer Reddinger's computer system. (*Id.* at 40). This fact does not affect the outcome of the case as Officer Reddinger saw the operator for a sufficient time to tell that the driver was a male. (*Id.* at pp. 7-10).

[4]There were four other people in Defendant's vehicle—a 20 to 30 year old male in the front passenger seat and three females in the back seat. (N.T. 2/2/2015, p. 17, 37).

3

impairment in that he had bloodshot eyes, slurred speech and an odor of an alcoholic beverage coming from his breath. (*Id.* at 15-16, 18). Officer Reddinger administered three field sobriety tests on a flat, dry, level surface which was lit by streetlights, the Officer's flashlight and his patrol car spotlight. (*Id.* at 19-20). These tests were the horizontal gaze nystagmus test ("HGN"), the walk and turn or heel to toe test, and the one leg stand test. (Id at 19). Defendant showed six out of six possible indicators for impairment[5] on the HGN, four indicators of impairment on the walk and turn test,[6] and no indicators of impairment on the one-leg stand test.[7] (*Id.* at 22, 26-27). Officer Reddinger administered a preliminary breath test ("PBT") to Defendant using the Alco-Sensor FST. (*Id.* at 32). The Court took judicial notice that the Alco Sensor-FST was approved by the Department of Health as a pre-arrest breath testing device pursuant to 44 Pa. B. 4277 (July 5, 2014). (*Id.* at 32-33). The PBT showed a reading of .138 percent blood alcohol. (*Id.* at 33). Officer Reddinger then arrested Defendant for driving under the influence of alcohol. (*Id.*).

## Discussion

Defendant contends that the stop of his vehicle was not supported by reasonable suspicion or probable cause. In order to establish reasonable suspicion of a Vehicle Code violation under 75 Pa.C.S. § 6308 (b), a police officer must be able to point to specific and articulable facts which led the officer to suspect that a violation has occurred.

---

[5]Officer Reddinger's training suggests that a person who shows at least four out of six indicators on the HGN has a high likelihood of impairment. (N.T. 2/2/2015, p. 21-22).

[6] At least two indicators of impairment on this test suggest a person is likely intoxicated. (N.T. 2/2/2015, p. 26-27).

[7]At least two indicators of impairment on the one leg stand test suggest a person is likely intoxicated. (N.T. 2/2/2015, p. 28).

4

*Commonwealth v. Holmes*, 609 Pa. 1, 11-13, 14 A.3d 89, 95-96 (2011). The court considers the totality of the circumstances and must afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience. *Id.* Probable cause is a more demanding standard than reasonable suspicion and exists "where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed". *Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014); *see also Commonwealth v. Gayle*, 673 A.2d 927, 931 (Pa. Super. 1996). The existence of probable cause only requires a probability, and not a prima facie showing, of criminal activity and the totality of the circumstances facing the officer must be considered. *Martin,* 101 A.3d at 721. Section 6308(b) of the Vehicle Code provides that:

> **(b) Authority of police officer.**--Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa. C.S. § 6308(b).

The Superior Court has interpreted this section to sometimes require that a police officer possess probable cause and not merely reasonable suspicion to initiate a traffic stop, depending on the investigative nature of the stop. *Commonwealth v. Wilson*, 111 A.3d 747, 754 (Pa. Super. 2015) (citing *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (en banc)). Reasonable suspicion of criminal activity or of a violation of the Vehicle Code under section 6308(b) will not justify a traffic stop where the driver's detention cannot serve an investigatory purpose related to the suspected violation.

5

*Feczko*, 10 A.3d at 1290-91 ("If *Terry*[8] allows an investigative stop based on reasonable suspicion, there must be something to investigate."); *see also Commonwealth v. Sands*, 887 A.2d 261, 270 (Pa. Super. 2005).

Where police officers are faced with a "non-investigable" violation, they are required to possess probable cause to believe that a violation has occurred before stopping a vehicle. *Feczko*, 10 A.3d at 1291 (citing *Commonwealth v. Chase*, 599 Pa. 80, 94, 960 A.2d 108, 116 (2008)). A "non-investigable" violation is a violation for which evidence thereof is not likely to be discovered by a subsequent investigation or detention of the driver at a motor vehicle stop. *See Chase*, 599 Pa. at 94, 960 A.2d at 115-116; *see also Sands*, 887 A.2d at 270 (noting that a violation such as driving at an unsafe speed is non-investigable and requires probable cause to stop a vehicle for such violation: "It is hard to imagine that an officer following a vehicle whose driver is suspected of driving at an unsafe speed would discover anything further from a stop and investigation . . . . [T]he officer either does or does not have probable cause to believe there has been a violation of the Vehicle Code. A subsequent stop of the vehicle is not likely to yield any more evidence to aid in the officer's determination."). Vehicle Code violations such as reckless driving, having an obscured license plate and driving at an unsafe speed are "non-investigable" violations of the Vehicle Code, and probable cause is required to initiate a traffic stop based on these violations. *Wilson*, 111 A.3d at 754-755.

However, reasonable suspicion is sufficient to stop a vehicle for suspected DUI since the driver's detention almost invariably leads to further evidence of that offense such

---

[8] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

as the strong odor of alcohol, slurred speech and blood shot eyes. *Sands*, 887 A.2d at 270. Likewise, when a police officer learns that the owner of a vehicle has a suspended license, and the operator of that vehicle matches the description of the owner provided by PennDOT, reasonable suspicion exists to stop the driver for operating under a suspended license. *Commonwealth v. Hilliar*, 943 A.2d 984, 992 (Pa. Super. 2008).

The Municipal Police Officer Jurisdiction Act ("MPJA"), 42 Pa.C.S. §§ 8951 *et seq.*, provides in pertinent part:

> **(a) General rule.**--Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
>
> . . .
>
> 2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S. § 8953(a)(2).

Technical violations of the MPJA's probable cause requirement set out in section 8953(a)(2) do not always warrant the suppression of inculpatory evidence. *Hilliar*, 943 A.2d at 992; *Commonwealth v. Arroyo*, 686 A.2d 1353, 1354 (Pa. Super. 2006); *see also Commonwealth v. O'Shea*, 523 Pa. 384, 398-400, 567 A.2d 1023, 1030 (1989) (approving a case by case determination of the appropriateness of excluding evidence obtained in violation of section 8953 of the MPJA, depending on all the circumstances, including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the MPJA, and the prejudice to the accused).

7

In *Arroyo*, a police officer stopped a vehicle at approximately 2 a.m. on the basis that the driver appeared to be in violation of 75 Pa.C.S. § 1503 (c)(1).[9] *Arroyo*, 686 A.2d at 1353-1354. The officer first saw the driver and initiated the traffic stop by turning on his patrol car lights within his own jurisdiction. *Id.* However, the vehicle travelled for another quarter-mile and finally stopped outside the officer's jurisdiction. *Id.* The Superior Court found that the stop was valid and supported at least by reasonable suspicion. *Id.* at 1354. The Court held that "when an officer activates his emergency lights and initiates a stop of a vehicle within his primary jurisdiction, the fact that the vehicle eventually comes to rest beyond the limits of the officer's jurisdiction does not establish a violation of the Statewide Municipal Police Jurisdiction Act. This is so even when the stop was initiated based upon a reasonable suspicion of a violation, rather than based upon probable cause." *Id.*

In *Hilliar*, the Superior Court refused to suppress evidence arising from a traffic stop despite finding a violation of the same probable cause requirement that Defendant complains of in this case. *Hilliar*, 943 A.2d at 992. In *Hilliar*, a police officer, within his own jurisdiction in West York Borough, ran the defendant's license plate and determined that the owner of the vehicle, a male, had a suspended license. *Id.* at 987-988. The officer observed that the driver was also a male, and appeared to be the same age as the owner.[10] *Id.* The officer concluded that the driver was the owner of the vehicle and decided to stop the vehicle while it was still within the officer's jurisdiction. *Id.* at 988. Prior

---

[9] 75 Pa.C.S. § 1503 (c)(1) makes it an offense for a junior license holder (license holder under 18 years of age) to drive on a public highway from 11 p.m. until 5 a.m. unless accompanied by a spouse 18 years or older, a parent, or a person in loco parentis.

[10] While the arresting officer knew that the vehicle's owner was a "middle aged man", the specific age that was provided to the officer is not stated. *See Hilliar*, 943 A.2d at 989-990.

8

to the stop, another police officer, from the same jurisdiction, happened to be coming down the road in the opposite direction and was contacted by the arresting officer while both officers were stopped at a traffic light. *Id.* The other police officer was able to confirm, by looking from the front of the vehicle, that the driver appeared to be the same age as that provided by PennDOT. *Id.* However, the arresting officer allowed the vehicle to travel through an upcoming intersection and into the next jurisdiction, since he thought that it would be safer for himself and the defendant if the vehicle would be stopped past an upcoming intersection. *Id.*

The Superior Court found that there was reasonable suspicion, but not probable cause, for the arresting officer to suspect that the defendant was driving with a suspended license. *Id.* at 990. The Court noted that section 8953(a)(2) of the MPJA applied and required that the arresting officer possess probable cause prior to stopping the vehicle. *Id.* Despite finding that the officer did not possess probable cause to believe that the defendant had a suspended license, the Court refused to suppress the evidence arising from the traffic stop finding suppression to be a "remedy all out of proportion to the violation". *Id.* at 992, (citing *Commonwealth v. Mason*, 507 Pa. 396, 407, 490 A.2d 421, 426 (1985) (holding that suppression of evidence is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures)). The Court stated that suppression of the evidence would grant the defendant a technical windfall for no good reason, and suppression was not warranted by the officer's minor infraction of the MPJA. *Id.* at 992. The Court utilized the case-by-case approach[11]

---

[11]*Commonwealth v. O'Shea*, 523 Pa. 384, 398-400, 567 A.2d 1023, 1030 (1989).

9

and noted that "the MPJA is to be construed liberally to achieve its purpose so as 'to promote public safety while maintaining police accountability to local authority; it is not intended to erect impenetrable jurisdictional walls benefiting only criminals hidden in their shadows'." *Id.* at 991 (citing *Commonwealth v. Lehman,* 582 Pa. 200, 870 A.2d 818, 820 (2005)).

At the outset, the Court notes that only reasonable suspicion, and not probable cause, of a Vehicle Code violation is required to justify the traffic stop in this case. Officer Reddinger stopped Defendant's vehicle because he suspected that Defendant was driving with a DUI related suspended license.[12] (N.T. 2/2/2015, p. 10). Since this offense is precisely the type of violation which a subsequent stop and investigation of a vehicle's driver is likely to confirm or dispel,[13] it is unlike those "non-investigable" offenses which require probable cause to justify a vehicle stop. *Sands, supra.*

Officer Reddinger possessed reasonable suspicion that Defendant was driving on a DUI related suspended license. Like the officer in *Hilliar,* Officer Reddinger had a good opportunity to discern that Defendant's sex and age matched the description of the vehicle's registered owner. Although the arresting officer in *Hilliar* had the benefit of another officer's observation to confirm that the driver matched the description of the registered owner, in this case Officer Reddinger had a clear and unobscured line of sight from which he identified Defendant's sex and approximate age. Officer Reddinger credibly

---

[12]75 Pa.C.S. § 1543 (b)(1).

[13]Officer Reddinger requested Defendant's licensing credentials to determine Defendant's identity. (N.T. 2/2/2015, p. 14).

10

testified that he got a good look at Defendant, for several seconds, as he drove in close proximity to Defendant's stationary Toyota. (N.T. 2/2/2015, pp. 7-9). Defendant's Toyota was stopped near a street lamp, and Officer Reddinger was able to tell that Defendant was driving, was a male, and was approximately 20 to 30 years old. (*Id.* at 7-8). When Officer Reddinger's computer relayed information that the vehicle's owner, a 30 year old male, had a suspended license, he concluded that the driver of the vehicle was the registered owner. Under these circumstances, this conclusion was reasonable and sufficient to establish reasonable suspicion. Officer Reddinger's personal observation of Defendant matched the owner's description, and Defendant's control of the vehicle suggested he was the vehicle's owner.

Had Defendant's vehicle come to a stop within Lancaster Township, the Court's inquiry into the legality of the vehicle stop's inception would be at an end. However, since Defendant's vehicle crossed into Lancaster City's jurisdiction, section 8953(a)(2) of the MPJA, requiring that Officer Reddinger possess probable cause that a motor vehicle violation has occurred within his jurisdiction prior to stopping a vehicle outside his jurisdiction, applies. *See Hilliar*, 943 A.2d at 990. Although, as in *Hilliar*, Officer Reddinger did not have probable cause to believe that Defendant was driving with a suspended license before initiating the traffic stop, suppression of the evidence arising from this stop is unwarranted.

In this case, Defendant's vehicle was stopped outside of Officer Reddinger's jurisdiction because of the five to ten second computer delay in displaying Defendant's license suspension. (N.T. 2/2/2015 pp. 9-11). When Officer Reddinger learned of the

11

suspended license, he activated his emergency lights to make a U-turn on North President Avenue to turn and stop Defendant's vehicle on Buchanan Avenue. (*Id.* at 10). At that time, Defendant had already turned down Buchanan Avenue and was heading toward or had already crossed into Lancaster City.

Officer Reddinger, like the police officers in *Hilliar* and *Arroyo,* possessed reasonable suspicion to stop Defendant's vehicle based on his personal observations of Defendant while he and Defendant were both inside his own jurisdiction. He also initiated the pursuit within his own jurisdiction. As in *Hilliar* and *Arroyo,* Officer Reddinger stopped Defendant outside of his jurisdiction without any misconduct on the Officer's part. In *Hilliar* and *Arroyo,* officers stopped the defendants outside their respective jurisdictions for safety reasons and due to the defendant's refusal to stop, respectively. In this case, the short delay between Officer Reddinger's personal observation of Defendant on the road and the confirmation that his driver's license was suspended was attributable to the computer delay.

Officer Reddinger activated his lights and made a U-turn in pursuit of Defendant as soon as his computer relayed Defendant's license suspension information. (N.T. 2/2/2015, pp. 10-11). Defendant was stopped no more than a few blocks from the border of Lancaster Township and Lancaster City. (*Id.* at 12-13). In light of the Pennsylvania Supreme Court's holding in *O'Shea, supra,* and the Superior Court's holdings in *Hilliar* and *Arroyo,* it would be a "remedy all out of proportion to the violation" to suppress the evidence due to lack of probable cause occasioned by a fortuitous computer delay over which Officer Reddinger had no control. As the Superior Court stated in *Hilliar,* the MPJA is to be

12

construed liberally to promote public safety without erecting impenetrable jurisdictional walls. Accordingly, the minor violation of the MPJA here does not warrant suppression.

Defendant's final claim of error is that the Court improperly allowed testimony regarding the results of the Preliminary Breath Test ("PBT"). Defendant contends that the Alco-Sensor FST PBT did not "meet the requirements of 75 Pa.C.S. § 1547(c) and the regulations issued pursuant thereto." This claim lacks merit.

The section of the Vehicle Code cited by Defendant, 75 Pa.C.S. § 1547(c), applies to breath testing offered in evidence against a defendant at trial, but does not apply to pre-arrest breath tests offered to establish probable cause to arrest. *See Commonwealth v. Brigidi*, 607 Pa. 329, 335-336, 6 A.3d 995, 998-999 (2010). In this case, the results of the PBT were *not* admitted as evidence in Defendant's non-jury trial. (N.T. 2/2/2015, pp. 99-101). The Court only considered the results of the PBT at the hearing on Defendant's suppression motion to determine whether or not Officer Reddinger had probable cause to arrest Defendant for driving under the influence of alcohol. (N.T. 2/2/2015, pp. 97-98). The Vehicle Code permits the use of a PBT which is approved by the Department of Health for the purpose of determining probable cause to arrest. *See* 75 Pa.C.S. § 1547(k); *Brigidi*, 607 Pa. at 335-36; 6 A.3d at 998-999; *see also Commonwealth v. Myrtetus*, 580 A.2d 42, 47 (Pa. Super. 1990). The Court took judicial notice that the Alco Sensor FST is approved by the Department of Health for use as a pre-arrest breath testing device pursuant to 44 Pa. B. 4277 (July 5, 2014). (N.T. 2/2/2015, pp. 32-33). The Court made it clear that it would not consider the testimony regarding impairment, including the results of the PBT elicited at the hearing on Defendant's suppression motion, at Defendant's non-jury trial.

13

(*Id*. at 99-101). The Court did consider testimony regarding the tests performed on samples of Defendant's blood to determine the presence of alcohol and the test results. (*Id*. at 101-114).

The Court submits this opinion as the trial court opinion required by Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

Date:   June 2, 2015

JAMES P. CULLEN, JUDGE

Attest:

Copies to:  Office of the District Attorney
           Christopher Patterson, Esquire

I certify this document to be filed in the Lancaster County Office of the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

14

IN THE SUPERIOR COURT OF PENNSYLVANIA

MIDDLE DISTRICT

COMMONWEALTH OF PENNSYLVANIA       :

VS.                                :  No 626 of 2015

KYLE DAVID PARDISE                  :

## CERTIFICATE OF SERVICE

I hereby certify that I have today caused to be served two (2) copies of the

foregoing "Brief for Appellant" upon the person and in the manner indicated

below, which satisfies the requirements of Pa. R.A.P 121:

Service by hand delivery:

Julie Slabinski
Assistant District Attorney
Lancaster County Courthouse
50 N. Duke Street
Lancaster, PA 17602

Law Office of Christopher M. Patterson

BY: _____

Christopher M. Patterson
Attorney for Appellant
Attorney I.D. # 27874
134 N. Lime Street
Lancaster, PA 17602
(717) 299-2301

Date: 7/20/15