J-S62003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JUSTIN WALTER ANTHONY HALE :
:
Appellant : No. 371 WDA 2018

Appeal from the Judgment of Sentence November 16, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012870-2015

BEFORE: PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.: **FILED FEBRUARY 11, 2020**

Appellant, Justin Hale, appeals *nunc pro tunc* from the judgment of

sentence entered on November 16, 2016, in the Court of Common Pleas of

Allegheny County, following his conviction of one count each of aggravated

assault, unlawful restraint, terroristic threats, and recklessly endangering

another person ("REAP").[1] On appeal, Appellant claims the trial court erred

in admitting testimony regarding his prior bad acts and the evidence was

insufficient to sustain his conviction for terroristic threats. After review, we

affirm.

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2902(a)(1), 2706(a)(1), and 2705,
respectively.

We take the underlying facts and procedural history in this matter from the trial court's May 22, 2019 opinion and our independent review of the record.

On September 12, 2015, at approximately 11:00 p.m., the victim, [E.T.], was in her apartment when she received a phone call from Appellant, her then boyfriend. (T.T. 44-46, 228). Appellant was intoxicated and asked the victim to pick him up in the New Brighton area. (T.T. 46, 169). The victim refused and remained in her apartment. (T.T. 46, 169). She received another phone call from Appellant around midnight, and again, she refused to pick him up. (T.T. 46-47, 169). Appellant called the victim a third time around 3:00 a.m., and she refused to pick him up a third time. (T.T. 48, 169). At approximately 4:00 a.m. the victim heard her doorbell ring and recognized Appellant's voice calling from outside. (T.T. 49-50, 169, 229). Appellant threatened to "cause a scene" if she did not let him in, so she decided to let Appellant into her apartment over fear if he did cause a scene she would be evicted. (T.T. 50, 169). Shortly after entering the apartment, Appellant took her cell phone from her bedroom and saw she had been on Facebook. (T.T. 56-57). Thereafter, the victim and Appellant began arguing over alleged infidelities and alleged Facebook messages/searches found on her cell phone. (T.T. 57-58, 334). At that time, Appellant began to physically assault the victim, grabbing her neck and scratching her, as well as breaking her cell phone. (T.T. 58-59, 170, 229). Appellant escalated the assault upon the victim: punching her, choking her, holding her down, hitting her head off of the wall, and threatening to kill her. Thereafter, he forcibly pulled her into the bedroom, threw her down on the bed, bound her ankles, tied her hands behind her back, and tied a cloth tight around her neck. (T.T. 64-67, 170, 186, 378-380, 219, 230). Appellant removed her clothes, covered her eyes, placed toilet paper in her mouth, and bound her mouth. (T.T. 67-68). Appellant then engaged in vaginal and anal intercourse with her. After the assault, Appellant forced her into the shower, still bound, and turned the water on for approximately one minute. After the victim was removed from the shower, Appellant entered the shower, and the victim was able to free one of her feet and ran out of the apartment naked to the neighbors, Kiesha and Kadiesha Wiley, who called 9-1-1. (T.T. 71-73, 152, 171, 187, 230). Kiesha Wiley photographed the victim with her cell phone before she removed the restraints from her wrists and

- 2 -

ankles. (T.T. 78-79, 155, 230). Kiesha Wiley observed welts and scratches along the victim's neck, and that the victim was unable to move her right shoulder. (T.T. 152).

Officer Vincent Tedesco of the Northern Regional Police Department arrived at the Wiley apartment at approximately 7:10 a.m. where he took a report from the victim. He observed her to have redness, bruising, and swelling on both sides of her neck and under her chin. She had similar marks/injuries on both her wrists. (T.T. 164-166). Officer Tedesco called for the paramedics due to her physical state. While waiting for the paramedics, the victim reported to Officer Tedesco that she had been physically and sexually assaulted by her boyfriend, the Appellant. (T.T. 168-171). Officer Tedesco also observed a cloth tied around the victim's left ankle. (T.T. 166). A search of the victim's apartment was conducted, and the apartment was found to be in disarray with the bedding having been removed, clothes strewn about, the bathroom door off its hinges and leaning against the shower stall. No one else was in the apartment as Appellant had fled the scene. (T.T. 172). The victim was transported to UPMC Passavant Hospital where she was examined and her injuries documented. (T.T. 190, 217-227).

Trial Court Opinion, 5/22/19, at 4-6.

On November 9, 2015, the Commonwealth filed a criminal information charging Appellant with the aforementioned offenses, along with one count each of rape, involuntary deviate sexual intercourse ("IDSI"), sexual assault, and indecent assault.[2] On August 19, 2016, the Commonwealth filed notice of its intent to present evidence of prior bad acts in the form of Appellant's lengthy history of violence against the victim. After hearing argument, the trial court allowed the evidence. N.T. Trial, 8/29/16, at 83-85.

_____

[2] 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(1), 3124.1, and 3126(a)(1).

A jury trial took place on August 29 through September 1, 2016. The jury acquitted Appellant of rape, IDSI, sexual assault, and indecent assault, but convicted him of aggravated assault, unlawful restraint, terroristic threats, and REAP. On November 16, 2016, the trial court sentenced Appellant to an aggregate term of 7 to 14 years' of imprisonment.

Appellant filed post-sentence motions on November 22, 2016. The trial court denied them on February 15, 2017. Appellant did not file a direct appeal. On December 18, 2017, Appellant filed a petition seeking reinstatement of his direct appeal rights pursuant to the Pennsylvania Post Conviction Relief Act (PCRA).[3] The court granted the PCRA petition on March 1, 2018. The instant, timely appeal followed.[4]

In his first issue, Appellant maintains the trial court erred in allowing the Commonwealth to present evidence of his history of violence against the victim. Appellant's Brief, at 25-36. Specifically, Appellant contends we should change the law regarding the admissibility of prior bad acts evidence to only allow its admission if the Commonwealth presents corroborating evidence. *See id.* However, Appellant waived this claim.

_____

[3] 42 Pa.C.S.A. §§ 9541–9546.

[4] On October 23, 2018, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After receiving an extension of time, Appellant filed a timely Rule 1925(b) statement on February 12, 2019. The trial court issued an opinion on May 22, 2019.

Our scope and standard of review concerning the admission of evidence of a prior bad act by the defendant is well settled.

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.
>
> Evidence of prior bad acts committed by a defendant is not admissible solely to show the defendant's bad character or his propensity for committing bad acts. However, evidence of prior bad acts is admissible where there is a legitimate reason for the evidence, such as to establish:  1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan; and 5) identity. The evidence may also be admissible to impeach the credibility of a testifying defendant; to show that the defendant has used the prior bad acts to threaten the victim; and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.

*Commonwealth v. Page*, 965 A.2d 1212, 1219 (Pa. Super. 2009) (citation and emphasis omitted).

Here, as discussed above, Appellant claims the trial court improperly admitted the prior bad acts evidence because the Commonwealth failed to introduce corroboration. *See* Appellant's Brief, at 25-36. At trial, Appellant objected only on the bases the evidence was irrelevant, cumulative, and prejudicial. N.T. Trial 8/29/16 – 9/1/16, at 82-83. This Court has stated, "[w]here a specific objection is interposed, other possible grounds for the

objection are waived." ***Commonwealth v. Shank***, 883 A.2d 658, 672 (Pa. Super. 2005) (citation omitted). Because Appellant did not object to the admission of the evidence on the grounds of lack of corroboration, he waived the claim.[5] ***See Shank***, ***supra*** at 672. Appellant's first contention does not merit relief.

In his second and final claim, Appellant challenges the sufficiency of the evidence underlying his conviction for terroristic threats. ***See*** Appellant's Brief, at 37-40. Specifically, Appellant contends the Commonwealth "presented insufficient evidence regarding the *mens rea* element." ***Id.*** At 37. We disagree.

_____

[5] In any event, the claim lacks merit. Initially, Appellant concedes the trial court properly admitted the evidence in question under the current state of the law. ***See*** Appellant's Brief, at 25-36. What he seeks is a change in the law on the admissibility of prior bad acts evidence. ***See id.*** This panel lacks the authority to effect the change in law sought by Appellant. ***See Commonwealth v. Brigidi***, 6 A.3d 995, 1001 (Pa. 2010) (citation omitted) (noting three-judge panel of Superior Court is bound by *stare decisis* until the prior decision is reversed by either Supreme Court or *en banc* panel of Superior Court).

Moreover, we have reviewed the evidence in question and conclude the trial court did not abuse its discretion in admitting it. The evidence was clearly probative because it explained why the victim was afraid of Appellant and did not want him in her apartment, and her conduct of attempting to placate Appellant during the incident. ***See Commonwealth v. Ivy***, 146 A.3d 241, 252 (Pa. Super. 2016) (reversing trial court decision excluding admission of protection from abuse order obtained by victim against appellant and noting evidence of prior abuse between appellant and victim is generally admissible); ***Commonwealth v. Jackson***, 900 A.2d 936, 940 (Pa. Super. 2006), (holding history of prior domestic violence between appellant and murder victim was admissible as part of sequence of events which formed history of case as well as to show motive, malice, intent and ill-will towards victim).

Our standard of review of a sufficiency claim is well settled:

Our standard for evaluating sufficiency of the evidence is whether the evidence, viewed in the light most favorable to the Commonwealth [as verdict winner], is sufficient to enable a reasonable [factfinder] to find every element of the crime beyond a reasonable doubt. [T]he entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct. Moreover, [t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Shull*, 148 A.3d 820, 844 (Pa. Super. 2016) (citation omitted).

A person commits the offense of terroristic threats if he "communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). An individual acts intentionally with respect to a material element of an offense when "it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i). Therefore, to sustain a conviction for terroristic threats, the evidence must demonstrate: "(1) the defendant made a threat to commit a crime of violence; and (2) such threat was communicated with the intent of terrorizing another or with reckless disregard for the risk of causing terror. A direct communication between the defendant and the victim is not required to establish the crime of terroristic threats." *In the Interest of L.A.*, 853 A.2d 388, 391-92 (Pa. Super. 2004) (citation omitted). It is not

necessary that the defendant have either the ability or the instrumentality to carry out the threat. ***See Commonwealth v. Cancilla***, 649 A.2d 991, 993 (Pa. Super. 1994) (evidence sufficient to sustain conviction for terroristic threats where defendant called in bomb threat even though there was no bomb and no one was injured).

Here, the trial court did not find merit in Appellant's arguments:

> Contrary to Appellant's assertion that the comments were mere spur-of-the-moment threats which resulted from anger, the testimony established that Appellant clearly communicated threats to the victim with the intent to terrorize, which included threats to both rape and kill her. Specifically, Appellant communicated threats that he was going to kill her, and that he was going to send her to her son and grandmother, both of whom were deceased. (T.T. 67). Additionally, Appellant, while holding the victim face down on the bed, told her that her biggest fear, that of being raped, was going to come true as he removed her clothes and began tying her up. (T.T. 77). Clearly such threats, under the circumstances in which they were made, were communicated with the intent to terrorize the victim. ***See Commonwealth v. Walker***, 836 A.2d 999, 1001 (Pa. Super. 2003) (holding that Appellant's threats to kill were not mere spur-of-the-moment threats resulting from anger as anger does not negate a person's capability to form the intent to terrorize, and the Commonwealth presented sufficient evidence to establish the required *mens rea*).

Trial Ct. Op. at 10. Our independent review of the relevant law and the certified record confirms the trial court's analysis.

Moreover, Appellant's claim is, in essence, a contention the jury should have credited his testimony rather than the victim's. ***See*** Appellant's Brief, at 37-40. However, such an argument goes to the weight of the evidence, not the sufficiency of the evidence. ***See Commonwealth v. W.H.M., Jr.***, 932

A.2d 155, 160 (Pa. Super. 2007) (claim jury should have believed appellant's version of event rather than victim's goes to weight, not sufficiency of evidence); **Commonwealth v. Wilson**, 825 A.2d 710, 713-14 (Pa. Super. 2003) (review of sufficiency of evidence does not include assessment of credibility of testimony; such claim goes to weight of evidence); **Commonwealth v. Gaskins**, 692 A.2d 224, 227 (Pa. Super. 1997) (credibility determinations are made by finder of fact and challenges to those determinations go to weight, not sufficiency of evidence). Accordingly, Appellant's sufficiency of the evidence claim does not merit relief.[6]

Appellant's issues are either waived or lack merit. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[6] Further, to the extent Appellant may be claiming the verdict is inconsistent, we note:

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment.

**Commonwealth v. Thoeun Tha**, 64 A.3d 704, 711 (Pa. Super. 2013).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/11/2020