**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Blaine Allen HILLIAR, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2008.
Filed Feb. 21, 2008.

John G. Bergdoll, IV, York, for appellant.

Seth F. Bortner, York, for appellee.

BEFORE: STEVENS, ORIE MELVIN and BENDER, JJ.

OPINION BY BENDER, J.

¶ 1 Blaine Allen Hilliar (Appellant) appeals from the judgment of sentence entered following his conviction for Driving Under the Influence. Appellant raises several allegations of error, all of which we conclude lack merit. Accordingly, we affirm.

¶ 2 The trial court summarized the factual and procedural history of this case as follows:

The arresting police officer's attention was called to the defendant's vehicle as he proceeded east on Market Street in West York Borough. The police officer ran the defendant's license plate, and determined that the owner of the vehicle's license was under suspension. The officer also discovered the owner's age

and that he was a male. From his observation of the driver the officer believed that the defendant was male, and was about the same age as the owner. Based on the officer's conclusion that it was likely that the person operating the vehicle was the owner because he was a male of the same age as the owner and had possession of the owner's vehicle, the police officer decided to stop the vehicle for suspicion of driving on a suspended license. The police officer made the decision to stop the defendant while the defendant was still within the West York Borough limits. However, by this time the defendant was approaching the Borough line. It was the officer's conclusion that it would be safer to permit the defendant to cross the Borough line, proceed through an upcoming traffic light, and then be able to make the stop with less interference to traffic and with more safety for both the officer and the defendant. Therefore the stop actually occurred after defendant's vehicle had crossed the line into the next jurisdiction. Through sheer happenstance another officer from the same jurisdiction was traveling an opposite direction, and had a view of the defendant's vehicle from the front. Therefore the arresting officer contacted the officer while waiting for the light to change, and received confirmation from that officer that he also believed the driver matched the age provided by PennDOT of the owner prior to the stop.

After the defendant proceeded through the light, the officer turned on lights and sirens to pull the defendant over. The defendant failed to pull over immediately, and proceeded slowly for several more blocks before he pulled into a parking lot. When the officer talked to the defendant after the stop, the defendant exhibited the classic signs of intoxication, such as odor of alcohol, slurred speech, etc.

Trial Court Opinion, (T.C.O.), 3/8/07, at 1–2. Based on the foregoing, the officer took Appellant into custody and transported him to York Hospital for a blood test. Appellant submitted to the blood test which revealed a blood alcohol content of .256%. Consequently, Appellant was arrested and charged with DUI and Driving While Operating Privilege is Suspended. *See* 75 Pa.C.S. §§ 1543, 3802(c). Appellant filed a motion to suppress, which the trial court denied. After a bench trial, Appellant was convicted of both offenses. This was Appellant's seventh DUI, and his third offense for the purpose of sentencing. The court sentenced Appellant to fifteen months' imprisonment on the DUI offense to be served concurrently with a ninety day sentence for the driving under suspension conviction. Appellant then filed this appeal raising four questions for our review:

I. Whether because the stop was not conducted within the primary jurisdiction of the Officer and the Officer lacked probable cause to be in fresh pursuit of the vehicle the Officer had neither authority nor jurisdiction to stop Mr. Hilliar and the stop was in Violation of the Statewide Municipal Jurisdiction Act, the Constitution of the Commonwealth of Pennsylvania and the Constitution of the United States and the illegal stop warrants suppression of all evidence gained as a result.

II. Whether chemical testing as conducted in this case was not competent, credible, reliable and accurate to the extent required under the laws and regulations of Pennsylvania and therefore the Commonwealth has failed to meet the requirements under § 1547 of the Motor Vehicle Code and failed to provide or preserve relevant evidence and

thus violated the laws and statutes of the Commonwealth of Pennsylvania and the Constitution of the United States.

III. Whether the Officer lacked Probable Cause to arrest Mr. Hilliar for DUI due to minimal observations of intoxication.

IV. Whether the 2004 DAI *Per Se* Laws, 75 Pa.C.S. § 3801 *et seq.* and § 1547 and attendant Statutes violate the Constitution of the Commonwealth of Pennsylvania and the United States Constitution as to (A) separation of powers, (B) procedural due process of law, right to counsel and Constitutional or Statutory warnings and confrontation of witnesses, rights as to self incrimination, and search and seizure, (C) the police power of government, (D) equal protection of law, (E) prohibitions against cruel and unusual punishment, and (F) freedom of expression, freedom of travel, freedom to assemble, freedom of association and rights to participate as a citizen.

Brief for Appellant at 4.

■ ¶ 3 In the first three questions presented for our review, Appellant challenges the trial court's denial of his motion to suppress. Our standard for reviewing an order denying a motion to suppress is as follows:

> We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Hughes,* 908 A.2d 924, 927 (Pa.Super.2006).

■ ¶ 4 In the first question presented for our review, Appellant claims that the trial court erred in denying Appellant's motion to suppress because the officer violated the Municipal Police Jurisdiction Act (MPJA). *See* 42 Pa.C.S. §§ 9541–9546. As a general rule, the MPJA provides:

> Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
>
> · · ·
>
> (2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S. § 8953(a)(2). Under subsection two, if a police officer possesses probable cause that an offense has been committed in his or her primary jurisdiction, and is in hot and fresh pursuit of the perpetrator of the offense, the officer is vested with the same powers of law enforcement when the officer crosses out of his or her primary jurisdiction.

¶ 5 While in his primary jurisdiction, the officer in this case observed Appellant driving a vehicle whose owner had a suspended license. As we now know, Appellant was the owner and driver, but the officer did not know this for a fact. However, the officer did observe that the driv-

er, *i.e.* Appellant, was a middle aged man, which matched the description of the owner of the vehicle. Based on this information, the officer decided to initiate a traffic stop.

¶ 6 Pursuant to 75 Pa.C.S. § 6308(b), a police officer may stop a vehicle anytime the officer possesses reasonable suspicion of a motor vehicle violation.

> In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Smith,* 917 A.2d 848, 852 n. 4 (Pa.Super.2007) (citations and quotation marks omitted) (alteration in original). We conclude that under the facts of this case, the officer's suspicion that the driver of the vehicle was also the owner was a reasonable one because the driver matched the description of the owner as a middle aged man.[1] Consequently, had the officer initiated a traffic stop while in his primary jurisdiction it would have been entirely legal. However, due to traffic considerations, the officer waited just a few moments to execute the stop and by this time he was outside his primary jurisdiction.

■ ¶ 7 Nonetheless, the MPJA requires probable cause that a violation has occurred within the officer's primary jurisdiction in order for the officer to carry out his or her law enforcement duties outside the primary jurisdiction. In this case, the officer did not possess probable cause to believe that an offense had been committed in his primary jurisdiction and consequently, there was a plain violation of the MPJA. *But see Commonwealth v. Arroyo,* 455 Pa.Super. 76, 686 A.2d 1353, 1354 (1996) (stating, "We hold that when an officer activates his emergency lights and initiates a stop of a vehicle within his primary jurisdiction, the fact that the vehicle eventually comes to rest beyond the limits of the officer's jurisdiction does not establish a violation of the Statewide Municipal Police Jurisdiction Act. This is so even when the stop was initiated based upon a reasonable suspicion of a violation, rather than based upon probable cause."). However, we conclude this does not mean that Appellant was entitled to suppression of the inculpatory evidence that resulted from the stop, as such a remedy is not warranted by the officer's relatively minor infraction of the MPJA in this case.

¶ 8 This Court is often called upon to determine whether a violation of the MPJA has occurred, and if so, whether suppression of the evidence is warranted. We have taken a case by case approach, noting that the MPJA is to be construed liberally to achieve its purpose so as "to

---

**1.** Appellant's reliance on *Commonwealth v. Andersen,* 753 A.2d 1289 (Pa.Super.2000), is misplaced for two reasons. First, in *Andersen,* we concluded that the officer lacked "articulable and reasonable grounds" to stop the vehicle when the driver was suspected of driving under suspension. However, the articulable and reasonable grounds standard, which our Supreme Court equated with probable cause, *see Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 1113, 1116 (1995), emanated from the prior version of Section 6308(b), which was revised in 2003 when the legislature replaced it with the less stringent standard of "reasonable suspicion." Second, in *Andersen,* there is no mention of the police officer making any observation of the physical characteristics of the driver.

promote public safety while maintaining police accountability to local authority; it is not intended to erect impenetrable jurisdictional walls benefit[ing] only criminals hidden in their shadows." *Commonwealth v. Lehman,* 582 Pa. 200, 870 A.2d 818, 820 (2005) (quotation marks omitted). *See also Commonwealth v. Peters,* 915 A.2d 1213 (Pa.Super.2007), *appeal granted,* —— Pa. ——, 938 A.2d 988 (2007).

¶ 9 We take notice of the fact that often claims of MPJA violations begin with an officer viewing what he or she believes to be criminal activity *while on patrol in his or her primary jurisdiction.* Almost invariably, it is a drunk driver who ultimately crosses into a bordering municipality followed by the investigating officer who leaves his primary jurisdiction and stops the drunk driver a short time later. Frequently, however, the infraction or occurrence that leads the officer out of his or jurisdiction is not the DUI itself, but rather something else the driver has done in the officer's primary jurisdiction that leads the officer to conclude that he or she should stop the vehicle to investigate. Except in extreme cases where the overwhelming circumstances give rise to probable cause of a DUI violation, it is the ensuing interaction between the officer and the driver that yields the information that gives rise to probable cause of a DUI violation, *i.e.,* the slurred speech, the strong odor of alcohol, the blood shot eyes, and the generally disoriented and sometimes combative nature of the driver. The case before us falls into this usual pattern since the officer here had reasonable suspicion to believe that Appellant was driving under suspension while both Appellant and the officer were in the officer's primary

jurisdiction, and after stopping Appellant outside the officer's primary jurisdiction, he observed facts that gave rise to probable cause of a DUI violation.

■ ¶ 10 Most recently, this Court decided the *Peters* case in which we held that suppression of the evidence was not warranted even if there had been a violation of the MPJA.[2] While we also held that the officer in *Peters* had not violated the MPJA, we concluded that even if there had been a violation, the exclusionary rule would not apply and suppression was not a remedy available to the appellant. *Peters,* 915 A.2d at 1220. We recounted the following precedent which supported our conclusion:

> One of the principal purposes of the MPJA is to promote public safety while placing a general limitation on extraterritorial police patrols. It is in the interest of promoting public safety, therefore, that the MPJA exceptions contemplate and condone extra-territorial activity in response to specifically identified criminal behavior that occur[s] within the primary jurisdiction of the police.
> [*Commonwealth v.*] *Laird,* [797 A.2d 995, 998 (Pa.Super.2002)]. Because of this purpose, our Supreme Court has explained that suppression of evidence is not always an appropriate remedy when there has been a violation of the MPJA. In *Commonwealth v. O'Shea,* 523 Pa. 384, 567 A.2d 1023 (Pa.1989), the court stated:
>> In *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985), we held that suppression of evidence was an inappropriate remedy for a violation of the Rules of Criminal Procedure relating to the issuance and execution of a

**2.** We note that Appellant wrongly refers to our holding in *Peters* regarding suppression as dicta. This plainly is not so, as we referred to our analysis on this point as an alternative basis for affirming the trial court if we had concluded that an MPJA violation had occurred. *See Peters,* 915 A.2d at 1220.

search warrant outside of a police officer's primary jurisdiction where said violation did not implicate fundamental, constitutional concerns, was not conducted in bad faith or did not substantially prejudice the accused in the sense that the search would not otherwise have occurred or would not have been as intrusive. Automatic exclusion of evidence obtained by searches accompanied by relatively minor infractions of the rules of criminal procedure would be a remedy out of all proportion to the violation, or to the benefits gained to the end of obtaining justice while preserving individual liberties.

*Id.* at 1221 (citations omitted).

¶ 11 As we have already concluded, the officer in the instant case formed a reasonable suspicion to conclude that Appellant was driving under suspension while Appellant and the officer were still in the officer's primary jurisdiction. Thus, it would have been entirely legal for the officer to execute a traffic stop at that time and at that location. However, because of the traffic at that location, the officer decided to wait until he reached a less congested area, which occurred just seconds later. To permit suppression of the evidence under these facts would be to grant Appellant a technical windfall for no good reason. Appellant argues that his "Constitutional rights" were somehow violated by the traffic stop. Brief for Appellant 14. Appellant does not elaborate on this claim, and so far as we can discern, the MPJA does not bestow any additional constitutional rights upon the citizens of our Commonwealth.

¶ 12 We conclude that to grant suppression of the evidence obtained as result of the stop would be a remedy out of all proportion to the crimes for which Appellant was convicted. Like some scene out of the movie *Smokey and the Bandit,* Appellant would have this Court hold that law enforcement officers should step on the brakes at the borough line and watch the suspected criminal drive away on safe ground. In our Commonwealth, where the lines of the numerous municipalities sometimes meet and intersect in odd and sometimes confusing ways, this would too often lead to ineffectual law enforcement. The MPJA was not enacted to afford criminals or drunk drivers this protection. Consequently, we conclude that the trial court correctly denied Appellant's motion to suppress.

■ ¶ 13 In the second question presented for our review, Appellant challenges the chemical testing performed on his blood samples. More specifically, Appellant claims that the Commonwealth failed to show that "the equipment and procedures themselves were approved by the Department of Health and that the equipment and procedures used in this case were the best equipment and procedures that science and technology would permit." Brief for Appellant at 17. Appellant misapprehends the law.

¶ 14 Appellant's claim is two-fold. First he argues that the Commonwealth failed to establish that the "York County Hospital complies with the requirements under § 1547." *Id.* at 21–22. Section 1547 sets forth the requirements for the admissibility of chemical test results in prosecutions involving an amount of alcohol or controlled substance. In pertinent part, the section states:

(c) **Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of *section 3802* or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as

shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

...

(2) (i) Chemical tests of blood or urine, if conducted by a facility located· in this Commonwealth, shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health or by a Pennsylvania State Police criminal laboratory. For purposes of blood and urine testing, qualified person means an individual who is authorized to perform those chemical tests under the act of September 26, 1951 (P.L. 1539, No. 389), known as The Clinical Laboratory Act.

(ii) For purposes of blood and urine testing to determine blood alcohol or controlled substance content levels, the procedures and equipment prescribed by the Department of Health shall be reviewed within 120 days of the effective date of this subparagraph and at least every two years thereafter to ensure that consideration is given to scientific and technological advances so that testing conducted in accordance with the prescribed procedures utilizing the prescribed equipment will be as accurate and reliable as science and technology permit.

75 Pa.C.S. § 1547(c)(2) (footnote omitted).

■ ¶ 15 As a general rule, if a facility is approved by the Department of Health and listed in the Pennsylvania Bulletin, then the trial court may take judicial notice that the facility satisfies the requirements of Section 1547.

The Pennsylvania Department of Health approves laboratories to perform BAC tests. The Department's careful and thorough methods serve to [e]nsure that test results from an approved facility are valid and reliable. Approved facilities are listed in the Pennsylvania Bulletin. Publication in the Pennsylvania Bulletin and judicial notice thereof satisfy the requirements of 75 Pa.C.S. § 1547(c).

*Commonwealth v. Demark,* 800 A.2d 947, 952–53 (Pa.Super.2002) (citations omitted) (alteration in original). "It is because a blood alcohol test is basic and routine and, therefore, highly reliable, that the safeguards ordinarily afforded by confrontation and cross-examination are not required." *Commonwealth v. Sullivan,* 399 Pa.Super. 124, 581 A.2d 956, 958 (1990). "[A] party who believes that, notwithstanding a lab's state approval and publication in the Pennsylvania Bulletin, some error in testing occurred, i.e., the improper timing of a test or an equipment malfunction, is free to present evidence of that error to rebut the inference created by judicial notice." *Commonwealth v. Brown,* 428 Pa.Super. 587, 631 A.2d 1014, 1017 (1993). "Only specific allegations of testing errors, and not general, boilerplate objections to the admission of the test results, will require the Commonwealth to provide evidence of the test's reliability other than by reference to the Pennsylvania Bulletin." *Demark,* 800 A.2d at 953.

¶ 16 In the instant case, the Commonwealth requested that the trial court take judicial notice of the Pennsylvania Bulletin (36 PA Bulletin 3731) that listed the York County Hospital as an approved facility for testing blood, and the trial court granted the request and took notice of this fact. N.T., 1/5/07, at 2. Appellant did not come forward with any specific allegations of testing errors, and therefore, the Commonwealth was not required to provide

evidence to establish the test's reliability.[3] Accordingly, Appellant's first claim is to no avail.

■ ¶ 17 In Appellant's second claim regarding the testing of his blood, he fundamentally misreads subsection (ii). This subsection was added as part of the new DUI law, see 75 Pa.C.S. §§ 3801–3817, in 2004. According to Appellant, this subsection requires that the Commonwealth prove that every lab approved by the Department of Health conduct its testing "in accordance with the prescribed procedures utilizing prescribed equipment which is as accurate and reliable as science and technology permit." Brief for Appellant at 22. However, subsection (ii) speaks of the "procedures and equipment prescribed by the Department of Health" and with what frequency and standard *the Department of Health should review the prescribed procedures and equipment.* 75 Pa.C.S. 1547(c)(2)(ii). We do not read this section as burdening the Commonwealth or the testing facilities with any requirements additional to those set forth in the remainder of the section. Accordingly, we find no merit to Appellant's argument on this issue.

■ ¶ 18 In the third question presented for review, Appellant claims that the officer lacked probable cause to arrest Appellant after the traffic stop. "Probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled sub-

stance." *Commonwealth v. Welshans,* 397 Pa.Super. 439, 580 A.2d 379, 381 (1990). Here, the officer smelled a strong odor of alcohol and Appellant slurred his speech. Appellant also became verbally combative. Indeed, Appellant appeared to be the quintessential drunk driver. We have no difficulty determining that these circumstances warranted the officer's belief that Appellant had been driving under the influence of alcohol. Appellant's third question is to no avail.

■ ¶ 19 In the fourth question presented for our review, Appellant presents six challenges to the constitutionality of the new DUI law.

[W]hen evaluating challenges to a statute-whether those challenges are based on vagueness, overbreadth, the Commonwealth's burden of proof, the right to defend, or any other considerations-we must also keep in mind that there is a strong presumption that legislation is constitutional. A party challenging legislation bears a heavy burden to prove otherwise. Accordingly, this Court will strike the statute in question only if Appellant convinces us that it clearly, palpably and plainly violates the federal or state constitutions.

*Commonwealth v. Beshore,* 916 A.2d 1128, 1133 (Pa.Super.2007) (en banc) (alteration in original). Appellant's constitutional challenges are labeled "A" through "F" and we shall address these sub-questions seriatim.

---

**3.** Although Appellant claims that the Commonwealth withheld certain discoverable evidence that prevented him from articulating a more specific claim, we find this claim to be frivolous. Without any citation to the record, Appellant claims that he made several requests to the Commonwealth for, *inter alia,* the "certifications of the laboratory" and the "qualifications of testing personnel." Brief

for Appellant at 24. However, these requests are for records of the York County Hospital. We remind Appellant that this is not a case where the testing was conducted at a police facility, such as the breathalyzer test administered at the police station in the case of *Commonwealth v. Snell,* 811 A.2d 581 (Pa.Super.2002), a case to which Appellant erroneously cites in support of his argument.

¶ 20 In sub-question A, Appellant claims that the new DUI law violates the Pennsylvania Constitution because it governs criminal procedure, a matter within the province of the judiciary. We shall not delve far into this argument, as we conclude that its starting point is fatally flawed. The entire argument is premised on Appellant's claim that the "proscribed criminal act" of the new DUI law is only "driving under the influence." Brief for Appellant at 32. While we of course recognize that the purpose of the law is to curb drunk driving in the Commonwealth, the criminal act defined by the statute is not only driving under the influence, but it is also driving after drinking a sufficient amount of alcohol so that a subsequent blood alcohol test within two hours of driving yields a BAC beyond the limits set forth in Section 3802. *See* 75 Pa.C.S. 3802. Our Supreme Court discussed this scheme and held it to be not unconstitutionally vague or overbroad. The court stated:

Although the enactment under review does allow for a delay between driving and breath or blood testing, a close examination of the statute's text reveals that the offense occurs when the person drives after drinking a substantial quantity of alcohol. As set forth above, Section 3802(a)(2) states that an individual may not drive a car after imbibing enough alcohol such that he has a BAC level of at least 0.08 percent and less than 0.10 percent within two hours after driving. Hence, as noted, the *actus reus* is the act of driving after drinking a sufficient amount of alcohol, where a sufficient amount of alcohol, for present purposes, is that quantity which will cause the person's BAC level to reach the statutorily prohibited range within two hours after driving, regardless of the actor's BAC level at the actual time of driving. Although the offense is defined by reference to a BAC measurement taken some time after driving, the prohibited conduct is drinking excessively and then driving, a conclusion buttressed by the title of Section 3802, "Driving under the influence of alcohol or controlled substance."

*Commonwealth v. Duda*, 592 Pa. 164, 923 A.2d 1138, 1148 (2007) (citation omitted). Thus, contrary to Appellant's claims that a BAC test result within the prohibited range constitutes procedural proof of driving under the influence, the BAC test result within the prohibited range is actually part of the actus reus for a violation of Section 3802.

¶ 21 In sub-question B, Appellant presents eleven pages of rambling argument that read more like a law review article than an appellate brief. We shall attempt to untangle the claims he presents therein. In the first three and a half pages, he argues that the new DUI law is unconstitutional for the same reasons set forth by our Supreme Court in *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996). However, the court's holding in *Barud* applied to the prior DUI law, and in *Duda*, the court concluded that the *Barud* holding does not invalidate Section 3802. *See Duda*, 923 A.2d at 1147.

¶ 22 In the remainder of sub-question B, Appellant argues that "it is impossible to determine blood alcohol at the time of driving based solely on a sample taken after driving" and that the law is unconstitutional because it "fails to require any proof that a defendant's BAC level was over the legal limit at the time of driving." Brief for Appellant at 41. Again, this issue has already been resolved by our courts:

As applied to the present matter, it is beyond dispute that the state has a valid interest in curbing alcohol-related roadway accidents. Furthermore, there is

no constitutional right to drink and then drive while the alcohol is still in one's system. As stated in [*Commonwealth v. Mikulan,* 504 Pa. 244, 470 A.2d 1339 (1983) ],

there is no constitutional, statutory or common law right to the consumption of *any* quantity of alcohol before driving and there is little doubt that the legislature could, if it so chooses, prohibit driving within a certain reasonable time after drinking *any* amount of alcohol (so long as the prohibition was rationally related to the legitimate legislative purpose).

*Mikulan,* 504 Pa. at 254, 470 A.2d at 1344 (emphasis in original); *accord Cacavas v. Bowen,* 168 Ariz. 114, 811 P.2d 366, 370 (App.1991) ("Even if we assume that a right to drive is fundamental when one can meet the qualifications set by the legislature, and assume that one of suitable age has a 'right' to drink in a state which licenses and permits the sale of alcoholic beverages, the statute does not affect these rights. It does not prohibit driving. It does not prohibit drinking. It prohibits drinking and driving. We know of no constitutional right to drink and drive[.]" (emphasis in original)).

*Duda,* 923 A.2d at 1150 (citations omitted).[4]

■■■■ ¶ 23 In sub-question D, Appellant presents an Equal Protection claim.

When addressing an equal protection challenge, we must initially ascertain the appropriate degree of scrutiny to which the challenged act is to be subjected. Equal protection analysis recognizes three types of governmental classification, each of which calls for a different standard of scrutiny. The appropriate standard of review is determined by examining the nature of the classification and the rights thereby affected.

In the first type of case, where the classification relates to who may exercise a fundamental right or is based on a suspect trait such as race or national origin, strict scrutiny is required. When strict scrutiny is employed, a classification will be invalid unless it is found to be necessary to the achievement of a compelling state interest.

The second type of case involves a classification which, although not suspect, is either sensitive or important but not fundamental. Such a classification must serve an important governmental interest and be substantially related to the achievement of that objective.

The third type of situation involves classifications which are neither suspect nor sensitive or rights which are neither fundamental nor important. Such classifications will be valid as long as they are rationally related to a legitimate governmental interest.

*Beshore,* 916 A.2d at 1133.

¶ 24 In the instant case, Appellant's argument bears no relationship to the law, but rather claims:

The statute does not account for the inherent diversity of human physiology of the people in the Commonwealth. No two persons are physiologically alike.

Brief for Appellant at 50. However, this elementary observation does not identify a suspect class, a sensitive right, or a fundamental right. Having failed to do so, we apply the rational basis test, and as we have already discussed *supra,* the new DUI law is rationally related to a legiti-

---

4. This also disposes of sub-question C, where Appellant argues that law is invalid because it "makes it a crime to be at a certain BAC level within two hours of driving." Brief for Appellant at 47.

mate governmental interest in curbing drunk driving. *See Duda,* 923 A.2d at 1150.

¶ 25 In sub-question E, Appellant claims that the new DUI law results in cruel and unusual punishment.

Just what constitutes cruel and unusual punishment in the constitutional sense is a matter which defies concrete definition. However, it has long been understood that the concept of cruel and unusual punishment is one of wide application, capable of acquiring new depth of meaning to conform to more enlightened concepts of criminal justice.

. . . .

The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards.

*Rivera v. Pennsylvania Dep't of Corrections,* 837 A.2d 525, 533 (Pa.Super.2003).

¶ 26 Appellant here claims that his sentence "offends the standards of decency that evolved in our society." Brief for Appellant at 50. We disagree. Appellant drank a sufficient amount of alcohol so that within two hours of driving, his BAC was .256%. It is well known that Appellant would have had to imbibe what a reasonable person would deem as an excessive amount of alcohol before making the decision to drive his vehicle. Appellant made this decision notwithstanding the fact that he had already been convicted of seven DUIs and that his driving privileges were suspended. In short, Appellant made a gross attempt to flout the law and he was caught. Far from exceeding the limits of civilized standards, Appellant's sentence was entirely appropriate.

¶ 27 In sub-question F, Appellant claims that the new DUI law violates *inter alia,* his right to freedom of expression and freedom to assemble. Appellant's argument on this is less than one page in length and contains no citation to any legal authority. Nor does he articulate how this claim is related to the facts of this case. For obvious reasons then, this claim is waived.

¶ 28 Judgment of sentence affirmed.

¶ 29 Judge ORIE MELVIN concurs in the result.