J-S24020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEREMY MICHAEL KANSKI, | |
| Appellant | No. 1390 MDA 2015 |

Appeal from the Judgment of Sentence April 22, 2015
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001686-2013

BEFORE:  GANTMAN, P.J., BOWES, AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 01, 2016**

Jeremy Kanski appeals from the April 22, 2015 judgment of sentence of six months of County Intermediate Punishment, with thirty days of work-release imprisonment, that was imposed after he was convicted at an October 28, 2014 nonjury trial of driving under the influence of alcohol ("DUI")—high rate of alcohol.  The offense was graded as a misdemeanor since it was Appellant's second offense.  We affirm.

During the late night hours of July 5, 2013, and into the early morning hours of July 6, 2013, the Lycoming County DUI task force launched DUI checkpoints.  Montoursville Borough Deputy Chief Jason Bentley participated in the operation.  Deputy Chief Bentley had conducted about 100 DUI investigations during his eight and one-half year tenure in the police

department, was certified in the administration of standardized field sobriety testing, and had completed courses on conducting DUI checkpoints. He was stationed at the intersection of Arch Street and Reach Road in Williamsport, where one of the checkpoints was being conducted, and he examined drivers as they were stopped.

At approximately 11:40 p.m. on July 5, 2013, Appellant was driving a Jeep that proceeded into the Arch Street/Reach Road checkpoint. Deputy Chief Bentley introduced himself, explained to Appellant that he was at a DUI checkpoint, and asked for Appellant's driver's license and registration and whether he had anything to drink that evening. Appellant admitted to drinking four or five beers, and Deputy Chief Bentley "could smell the odor of alcohol coming from [Appellant's] breath." N.T. Nonjury Trial, 10/28/14, at 11. Deputy Chief Bentley also noticed that Appellant's eyes were glassy.

Deputy Chief Bentley administered a preliminary breath test ("PBT"), which indicated that Appellant's blood alcohol content was .133%. Appellant was then ordered from the vehicle and asked to perform three field sobriety tests. The Horizontal Gaze and Nystagmus test indicated that Appellant was intoxicated. On the walk-the-line test, Appellant missed heel to toe on the first, second, and sixth steps and the ninth step on the return trip. Deputy Chief Bentley reported that this performance was unsatisfactory. Appellant was unable to maintain his balance during the one-legged stand and had to use his arms to steady himself; this performance was also unsatisfactory.

- 2 -

At that point, Deputy Chief Bentley concluded that he had probable cause to believe that Appellant was DUI and placed him under arrest. After being administered the appropriate warnings, Appellant consented to blood extraction, and his blood was drawn at 12:20 a.m. on July 6, 2013. His blood alcohol content ("BAC") was .140%.

On October 14, 2013, Appellant was charged with DUI-high rate of alcohol. Appellant waived his preliminary hearing on October 14, 2013, and, on January 10, 2014, he waived his arraignment, which had been continued at Appellant's request. On May 5, 2014, Appellant petitioned for the right to file an omnibus pre-trial motion *nunc pro tunc*, and simultaneously filed that motion. Appellant sought, *inter alia*, to challenge whether Deputy Chief Bentley had probable cause to arrest him at the DUI checkpoint. That motion was denied, without prejudice for Appellant to raise the question in his post-sentence motion.

After his conviction and sentencing, Appellant filed a post-sentence motion raising, *inter alia*, challenges to the weight of the evidence supporting his conviction and to the trial court's refusal to allow him to file a suppression motion *nunc pro tunc*. This appeal followed denial of the post-sentence motion. Appellant presents these issues on appeal:

> 1. Whether the trial court erred in the denial of [Appellant's] Omnibus Pre-Trial Motion *Nunc Pro Tunc* when the issues raised in the motion were meritorious and an injustice would be done if not heard?

  2. Whether the Judge's verdict as to count 1 is against the weight of the evidence when the laboratory analyst called by the Commonwealth was unable to testify as to many critical facts regarding the blood analysis and expiration dates of the testing material?

Appellant's brief at 7.

  Appellant first maintains that the trial court should have allowed him to file a motion to suppress *nunc pro tunc* to challenge whether Deputy Chief Bentley had probable cause to arrest him for DUI.[1] Pa.R.Crim.P. 579(a) provides that any omnibus pre-trial motion must be "filed and served within 30 days after arraignment unless" there was no opportunity to file one, the party filing the motion was not previously aware of the grounds for filing it, or "the time for filing has been extended by the court for cause shown." Appellant's arraignment was January 10, 2014, and he had until February 10, 2014, to file a pre-trial motion under this rule. His motion was filed three months later. Appellant suggests that the trial court should have permitted the *nunc pro* tunc filing for cause shown. He claims that he could have challenged that there was probable cause for his arrest and that he timely prepared a suppression motion but inadvertently failed to file it.

  While there is no case law articulating a standard of review in this precise context, an "abuse of discretion standard governs our review of the

---

[1] The omnibus pre-trial motion filed by Appellant contained other issues; however, the probable cause contention is the only one raised on appeal.

propriety of a grant or denial of an appeal *nunc pro tunc*." ***Commonwealth v. Stock***, 679 A.2d 760, 762 (Pa. 1996). We conclude that this standard is appropriately applied herein. The trial court declined to entertain the untimely suppression motion based on its conclusion that the record established the existence of probable cause to arrest, and, in his motion to suppress, Appellant provided no colorable challenge to that fact. After the post-sentence motion was filed, wherein Appellant averred the ruling was erroneous, the court examined a recording that had been made of Appellant performing the field sobriety tests. It concluded that the recording did not alter its view that probable cause existed for Appellant's DUI arrest.

Probable cause for a DUI arrest is present when a police officer has sufficient facts at his disposal to warrant a prudent person to believe that the driver of a vehicle is under the influence of alcohol. ***Commonwealth v. Angel***, 946 A.2d 115 (Pa.Super. 2008). The probable cause determination is made based upon the totality of the circumstances and "a police officer may utilize both his experience and personal observations to render an opinion as to whether a person is intoxicated." ***Commonwealth v. Williams***, 941 A.2d 14, 27 (Pa.Super. 2008) (citation omitted).

Herein, when Appellant's original motion was filed, the record established the existence of probable cause for Appellant's arrest for DUI. Deputy Chief Bentley reported that, after the stop, he smelled the odor of alcohol "emanating from the vehicle." Affidavit of Probable Cause, 7/17/13,

at 1. Appellant admitted to drinking four or five beers, and Deputy Chief Bentley shined a flashlight on Appellant's eyes, which "were glassy." *Id*. The officer then administered a PBT, which "registered at .133%," well above the .08% permitted by law. *Id*.; *see* 75 Pa.C.S. § 1547(k) (a police officer possessing reasonable suspicion that a person is DUI may require that person to undergo a PBT; "The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest.")

Deputy Chief Bentley then conducted three field sobriety tests. "The first task was the Horizontal Gaze and Nystagmus. [Deputy Chief Bentley] checked each eye and detected all six clues." *Id*. Appellant also failed the walk-and-turn and one-legged stand. Another officer then administered a second PBT test, which "registered .125%." *Id*. These facts were more than sufficient to support Deputy Chief Bentley's conclusion that he had probable cause to arrest Appellant for DUI. *Angel*, *supra* (probable cause for arrest existed with smell of alcohol on breath, slurred speech, glassy eyes, and refusal to conduct field sobriety tests). *Commonwealth v. Hilliar*, 943 A.2d 984 (Pa.Super. 2008) (arrest upheld where defendant smelled of alcohol, had slurred speech, and was combative).

In his untimely motion to suppress, Appellant's challenges to the existence of probable cause were that no open alcohol containers were contained in his vehicle, Deputy Chief Bentley did not ascertain if Appellant

had physical ailments preventing him from performing the field sobriety tests, and Appellant was not staggering around after he exited the vehicle. The trial court noted that none of those facts negated the existence of probable cause. It observed that Appellant did not tell Deputy Chief Bentley that he was unable to perform the tests due to a physical infirmity, a person does not have to be falling-down drunk to be DUI, and a person can be guilty of DUI without the existence of an open container of alcohol in his vehicle. The trial court concluded that an evidentiary hearing on the suppression motion was not warranted based upon Appellant's positions.

On appeal, Appellant levels those same averments. He observes that "Deputy Chief Bentley did not enquire into any physical ailments that [Appellant] may have had that would affect his performance on the tests." Appellant's brief at 15. Appellant also observes that, after he exited his Jeep, he was not staggering and losing his balance and that the recording of the stop did not "depict an individual [who] was obviously impaired[.]" Appellant's brief at 17. He asserts that he did not perform all that poorly on the field sobriety tests.

Appellant's current arguments do not obviate, to any extent, that the facts and circumstances at Deputy Chief Bentley's disposal gave him probable cause to arrest Appellant for DUI. We examine the facts and circumstances available to the police rather than those that are not present. A person can be driving under the influence without being incapable of

walking, and the fact remains that Appellant failed all three of his field sobriety tests. He smelled of alcohol and had glassy eyes. He admitted to drinking, and two PBTs indicated that his BAC was well above the legal limit. Deputy Chief Bentley had probable cause to arrest Appellant for DUI, and the trial court did not abuse its discretion in refusing to entertain Appellant's untimely suppression motion.

Appellant next raises a claim that his conviction was against the weight of the evidence. When we review a weight-of-the-evidence challenge, we do not examine the underlying question but the trial court's exercise of discretion in resolving the challenge. *Commonwealth v. Leatherby*, 116 A.3d 73 (Pa.Super. 2015). This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented. *Id*. Simply put, "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id*. at 82. A new trial is warranted in this context only when the verdict is "so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014).

On appeal, Appellant's argument is not a model of clarity, and he fails to cite to where his factual assertions are established in the record. He first

maintains that the trial court should not have believed the results of his BAC testing because the laboratory technician did not know the expiration date of the gray-topped glass tube in which his blood was placed. He provides no support for his counterintuitive proposition that glass tubes have expiration dates. We therefore find this position unavailing. Appellant also notes that the toxicologist who tested his blood reported that the glass tube with his blood was not sealed. He represents that she "testified that this [was] against the guidelines for such a sample and how it should arrive[.]" Appellant's brief at 21.

Appellant misconstrues the record. Donna Papsun tested Appellant's blood, which was in a gray-topped glass tube with a control number linking it to Appellant. She was asked whether the tube was sealed when she received it, and she responded that it was not. Ms. Papsun was then asked, "Even though it wasn't sealed, were you concerned with the quality of the sample?" N.T. Nonjury Trial, 10/28/14, at 52. The witness answered in the negative and explained, "We received samples unsealed before. It's up to the sender or the client who is sending it to us. As long as the sample is well stoppered, as well as it's collected in a gray top tube, I have **no concern** for the validity of the results." *Id*. at 53 (emphasis added). As Appellant's arguments lack evidentiary support, we find no abuse of discretion in the trial court's denial of his weight-of-the-evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/2016