J-A07005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SARAH BRETTON SCHROCK, | |
| Appellant | No. 679 WDA 2015 |

Appeal from the Judgment of Sentence of April 9, 2015
In the Court of Common Pleas of Somerset County
Criminal Division at No(s): CP-56-CR-0000277-2014

BEFORE:  BOWES, MUNDY AND JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 25, 2016**

Sarah Bretton Schrock appeals from the judgment of sentence of April 9, 2015, following her convictions for driving under the influence ("DUI"), driving while license is suspended or revoked, and careless driving.  We affirm.

At approximately 2:25 a.m., on December 1, 2013, Pennsylvania State Police Trooper Scott Kemerer observed a black Chevy Malibu traveling on South Pleasant Avenue in Somerset, Pennsylvania.  Trooper Kemerer was following the vehicle when it came to a red traffic signal at the intersection of South Pleasant Avenue and East Main Street.  A CVS Pharmacy and railroad crossing were located at this intersection.  While stopped directly behind the vehicle, Trooper Kemerer ran its registration information through

NCIC, which indicated that Appellant was a female and the registered owner of the car. It also showed Appellant's driver's license was suspended due to a prior DUI.

From his position directly behind the vehicle, and with the aid of the ambient light provided by the CVS Pharmacy and the illuminated railroad crossing, Trooper Kemerer was able to observe the operator's hair. Specifically noting the length of the hair, the trooper believed that the driver was female.

Based on this observation and the information provided by the NCIC, Trooper Kemerer initiated a traffic stop. Appellant identified herself to Trooper Kemerer, and following the stop, she was arrested for DUI after displaying signs of intoxication. Her blood was drawn within two hours of the traffic stop, and subsequent chemical testing disclosed a blood alcohol content of .177%.

Based on this encounter, Appellant was charged with the above-mentioned crimes. Appellant filed a pretrial motion to suppress all the evidence obtained as a result of the traffic stop, arguing that Trooper Kemerer lacked the requisite reasonable suspicion necessary to initiate the traffic stop. A suppression hearing was conducted, and after hearing argument on the motion, the trial court declined to suppress the evidence. Following a nonjury trial on January 23, 2015, Appellant was found guilty on all charges. This timely appeal followed.

The Appellant submits the following question for our consideration:

> Whether the court erred in finding that the police had reasonable suspicion to stop the Appellant's vehicle where the stop was premised solely on information from NCIC that the owner of the vehicle was DUI suspended and that the owner was female, and where it was not possible to identify the operator as female given the lighting conditions and the fact that the officer's view of the operator was obstructed by the vehicle's headrest.

Appellant's brief at 6 (unnecessary capitalization omitted).

In cases involving a review of the denial of a defendant's suppression motion, we are subject to the following standard of review:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

***Commonwealth v. Jones***, 121 A.3d 524, 526-527 (Pa.Super. 2015) (quoting ***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010)). (internal citations and quotation marks omitted).

Initially, we note the level of suspicion that a police officer must possess before stopping a vehicle is codified at 75 Pa.C.S. § 6308(b), which states:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

*Id*.

This Court clarified this general rule in **Commonwealth v. Feczko**, 10 A.3d 1285 (Pa.Super. 2010) (*en banc*). In **Feczko**, this Court determined that the language of Section 6308(b), as interpreted by our Supreme Court, establishes that reasonable suspicion is required to effectuate a traffic stop where the stop is based on suspicion of criminal activity or a suspected violation of the Motor Vehicle Code that requires additional investigation. *Id*. at 1291.

The Pennsylvania Supreme Court defines "reasonable suspicion" as follows:

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by the police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to 'specific and articulable facts' leading him to suspect criminality is afoot."

*Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2010) (citing *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999)). Here, further investigation was required to confirm whether the operator of the vehicle was driving with a suspended license. Therefore, we must determine only whether the trooper had the requisite level of reliable information, based on the totality of the circumstances, at the time of the traffic stop to establish that he was acting with reasonable suspicion.

Notwithstanding the quantum of cause necessary for an officer to stop a vehicle as outlined by the case law above, Appellant argues that the officer involved herein lacked sufficient probable cause to justify a traffic stop. Appellant's brief at 11-13. Appellant concedes the officer had information at the time of the stop, based on the NCIC, that the owner of Appellant's vehicle was a female with a DUI-suspended license. *Id*. at 15. Nonetheless, she asserts that, given the lighting conditions, the position of the respective vehicles, and the fact that the trooper's view was obstructed by the headrest in Appellant's vehicle, he was unable to reliably identify Appellant's gender, or any other identifying features. *Id*. at 14. As a result, Appellant continues, the trooper did not have sufficient probable cause to effectuate a traffic stop.

Initially, we note that Appellant improperly relies upon the probable cause standard. Here, Trooper Kemerer needed to investigate further to determine whether a Vehicle Code violation was occurring, *i.e.*, whether

- 5 -

Appellant was driving the car. Hence, the officer required only reasonable suspicion rather than probable cause, as outlined in *Feczko*, *supra*. We find Trooper Kemerer possessed sufficient information regarding the identity of the driver to support his reasonable suspicion. In denying Appellant's motion to suppress, the trial court found *Commonwealth v. Hilliar*, 943 A.2d 984 (Pa.Super. 2008), dispositive. We agree.

The defendant's arrest in *Hilliar* arose from circumstances substantially similar to those at issue here. In *Hilliar*, a police officer conducted a traffic stop after running the defendant's license plate and finding the owner's license was suspended. *Hilliar*, 943 A.2d at 987. The information included the owner's age and gender. *Id*. at 987-88. After observing that the driver was of the same gender, similar age, and was in possession of the owner's vehicle, the police officer stopped the vehicle on suspicion of driving on a suspended license. *Id*. This Court held that the police officer's suspicion that the driver of a vehicle was likely the owner was reasonable because the driver matched the description of the owner, a middle-aged man. *Id*. at 990.

Here, Trooper Kemerer obtained information that the owner of the black Chevy Malibu was a female, and had a suspended license. He testified, and the suppression court credited this testimony, that his observation of the driver's hair formed the basis of his belief that the driver was female. Contrary to Appellant's position, Trooper Kemerer asserted he

had an unobstructed view through the vehicle's rear-window and sufficient ambient lighting to perceive the length of the driver's hair. Notably, Trooper Kemerer did not testify to observing the driver's entire head, thus rendering Appellant's argument that his view was obstructed by the headrest unavailing.

Prior to initiating the traffic stop, Trooper Kemerer had personal knowledge that the owner of the black Chevy Malibu was a female with a DUI suspended license. Furthermore, based on his personal observations, he believed the person in possession of the Chevy Malibu was female. Just as in **Hilliar**, Appellant's traffic stop was a valid means to further investigate whether the driver was operating the vehicle under a suspended license. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2016

- 7 -