J-S33008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES A. BARRUZZA | : | |
| | : | |
| Appellant | : | No. 851 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 3, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0005639-2023

BEFORE: BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 17, 2025**

James A. Barruzza appeals from the judgment of sentence of five years of probation following his non-jury convictions for driving under the influence of a controlled substance ("DUI"), possession of controlled substance, and driving under DUI-related license suspension. On appeal, he challenges the trial court's denial of his suppression motion. We affirm.

We glean the following from the certified record. At approximately 3:15 p.m. on October 27, 2023, Officer Bryce O'Connor of the New Britain Township Police Department observed a white pickup truck, later confirmed to be driven by Appellant, traveling less than one car-length behind a vehicle and moving erratically. Specifically, it "swerve[ed] left and right in its own lane" and, at one point after the officer moved his vehicle behind Appellant's truck, the right tire "crossed entirely over the solid white line separat[ing] the travel lanes, and then back into his own travel lane." Decision and Order, 7/30/24, at 2

(pagination supplied). After the truck then changed lanes without signaling, Officer O'Connor activated his emergency lights to initiate a traffic stop. Appellant complied with the directive to stop by pulling into a parking lot, though he parked his truck across two spaces and partially blocked a properly-parked vehicle.

The officer approached and spoke with Appellant through the passenger side of the vehicle.[1] Appellant's speech was slurred and his movements were so jerky that when he pulled his requested registration from a plastic envelope, he ripped the registration. Appellant advised the officer that he probably could not produce a valid driver's license, as asked, because it was suspended due to a DUI premised upon his driving while taking prescription medication. The officer then asked Appellant, "What are you on right now?" *See* Commonwealth Exhibit 1 (Officer O'Connor body-worn camera) at 2:33-2:34. Appellant denied being under the influence and provided his name and date of birth. The officer called for backup while he checked Appellant's information inside his police vehicle.

The officer returned to the driver's side of Appellant's truck and asked him to remove his sunglasses. Appellant's pupils were "very constricted[.]" N.T. Suppression Hearing, 7/29/24, at 11. Officer O'Connor then informed Appellant that when his partner arrived, they would ensure that Appellant was

---

[1] The court, and this Court, viewed the footage from the officer's body-worn camera, which captured the ensuing events. We note that the video of the initial portion of this interaction is partially obscured by the passenger door.

safe to drive. Appellant responded that his back injuries had previously impacted his performance on field sobriety tests, and suggested that, if necessary, someone could pick him up. While they continued to wait, Appellant attempted to both leave his vehicle and reposition it, but the officer told him to stay put. When asked if there were any drugs or weapons in the truck, Appellant admitted there could be knives because he was a former chef, there was a broken ax handle behind his seat, and he had a medical marijuana card and marijuana, but he had not smoked that day.

Once backup arrived, Officer O'Connor conducted field sobriety tests. During the administration of the tests, he detected the slight odor of alcohol and marijuana on Appellant's breath. Additionally, he found multiple indicators from the tests that Appellant was potentially impaired. Specifically:

> 1) on the horizontal gaze and nystagmus test [Officer] O'Connor observed a lack of smooth pursuit and onset of nystagmus prior to [forty-five] degrees; 2) on the walk and turn test [Appellant] was off the line, used his arms for balance, and did not complete a proper turn; and 3) on the one-leg stand [Appellant] put his foot down, used his arms for balance, swayed, and hopped.

*Id*. at 4. Based on the foregoing, Officer O'Connor arrested Appellant for DUI and transported him for an evaluation with a drug recognition expert ("DRE").

Upon arrival at the station, the DRE examined Appellant and concluded that he was unable to safely operate a vehicle and was potentially under the influence of "1) a central nervous system depressant; 2) a central nervous system stimulant; 3) cannabis; and 4) alcohol." *Id*. at 5. The DRE read Appellant the Pennsylvania Department of Transportation DL-26 form, after

which he consented to a blood draw. The laboratory detected the presence of THC and amphetamine in Appellant's blood. Following his arrest, Appellant was also found to be in possession of cyclobenzaprine hydrochloride, a controlled substance.

Thereafter, the Commonwealth charged Appellant as indicated above. He filed a motion to suppress the blood draw results based upon an allegation that his arrest was not supported by probable cause. Following a suppression hearing, the trial court denied the motion. Appellant later proceeded to a stipulated non-jury trial and was found guilty as charged. The court sentenced him as indicated *supra* for DUI, with the first 150 days of that probationary period to be served on electronic home monitoring ("EHM"). The court set a mandatory fine of $1,500 for DUI and imposed a concurrent sentence of sixty days of EHM for driving while suspended and a $500 fine.

This timely appeal followed. Both Appellant and the trial court complied with the dictates of Pa.R.A.P. 1925. Appellant presents a single issue for our consideration: "Did the trial court err in denying Appellant's motion to suppress where the[re] was no probable cause to believe that Appellant was under the influence of alcohol or controlled substances to a degree which would render him incapable of safe driving?" Appellant's brief at 9 (some capitalization altered).

We consider this claim mindful of the following legal principles:

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope

of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Marberger***, ___ A.3d ___, 2025 WL 2434640, at *7 (Pa.Super. 2025) (cleaned up).

Appellant claims Officer O'Connor lacked probable cause to arrest him on suspicion of DUI. We have explained that "[p]robable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance." ***Commonwealth v. Hilliar***, 943 A.2d 984, 994 (Pa.Super. 2008) (cleaned up).

In denying suppression, the trial court concluded that Officer O'Connor had probable cause to conduct the traffic stop after observing Appellant violate the Vehicle Code, and reasonable suspicion to investigate because his driving behavior was indicative of driving while impaired. ***See*** Decision and Order, 7/30/24, at 7. It also determined that, thereafter, the officer had probable cause to arrest Appellant for DUI based upon the driving infractions, his slurred speech, the clues revealed during the field sobriety tests, and, as will be discussed in more detail below, the results of the DRE tests. ***Id***.

Appellant argues that the officer observed his driving behavior, which also included properly stopping at a red light, for less than a minute. ***See*** Appellant's brief at 16. He contests the trial court's characterization of his

driving as erratic because the traffic infractions were minor and the officer observed his driving for a limited time, but nonetheless concedes that Officer O'Connor possessed probable cause to conduct the traffic stop based upon the vehicle violation of changing lanes without a proper signal. However, he insists that his behavior was more likely evidence of driving while using a cell phone than being under the influence. *Id*. at 17-18.

Further, Appellant alleges that the ensuing interaction and field sobriety tests did not provide the officer with probable cause to arrest him for DUI because, among other things, his speech was not actually slurred and his difficulties with the tests were the result of his back injuries, as evidenced by his wearing a back brace at the time of the stop. *Id*. at 18-20. Finally, he contends that the trial court erred in relying upon the DRE tests for probable cause because that examination occurred after his arrest. *Id*. at 21.

At the outset, we agree with Appellant that the trial court improperly cited the DRE evaluation as a basis for probable cause to arrest as it occurred after the fact. Notwithstanding this error, our review of the record confirms that the body-worn camera footage and Officer O'Connor's testimony support the trial court's remaining findings of fact.[2] In determining whether the combination of those facts supports Appellant's arrest, we find the circumstances of *Marberger* to be particularly salient:

---

[2] Even if a suppression court errs in how it reached its decision to deny suppression, this Court may still affirm the ruling on any basis. *See Commonwealth v. Seeney*, 316 A.3d 645, 651 n.3 (Pa.Super. 2024).

> (1) the troopers, observing Marberger driving without headlights in addition to weaving into the oncoming lane of traffic, both violations of the Pennsylvania Motor Vehicle Code, effectuated a legal traffic stop; (2) upon approaching and conversing with him, Marberger's reported condition, including, *inter alia*, his bloodshot and glassy eyes, jittery body language, inability to sit still, talkative and oversharing manner, and contradictory explanation as to his whereabouts, provided reasonable suspicion, under a totality of the circumstances, for the troopers to engage in a more detailed post-stop investigation; and (3) Marberger's performance on the field sobriety tests, when coupled with other observations evidencing impairment, provided probable cause for the troopers to determine that he was under the influence of a controlled substance rendering him incapable of safe driving.

**Marberger**, ___ A.3d ___, 2025 WL 2434640, at *8 (cleaned up).

Here, as in **Marberger**, Officer O'Connor was authorized to conduct a traffic stop. In the matter *sub judice*, the officer's probable cause was premised upon seeing Appellant weave erratically within his lane of travel, follow unsafely close behind the vehicle in front of him, and violate the Vehicle Code by changing lanes without signaling. ***Id***. at *8 n.9 ("Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." (cleaned up)).

Appellant immediately exhibited, upon the officer's approach, such violently jerky movements that he tore his registration. Additionally, he slurred his speech and admitted that he probably did not have a valid driver's license because it was suspended for driving with a prescription medication. Moreover, when he pulled into the parking lot to comply with the traffic stop, he straddled two spots instead of properly parking between the lines. Again,

as in **Marberger**, these circumstances combined to provide Officer O'Connor with reasonable suspicion of impairment such that he could initiate an investigative detention to determine whether Appellant was capable of safely driving.

During that resulting investigation, the officer noted Appellant's pupils were constricted, he smelled alcohol and marijuana on Appellant's breath, and detected several clues of impairment from the field sobriety tests. Given the totality of all these circumstances, we conclude that Officer O'Connor had probable cause to arrest Appellant for DUI. Accordingly, we conclude that the trial court did not err in denying Appellant's suppression motion, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/17/2025